SEABOARD LIFE INSURANCE COMPANY V. VIOLA MURPHY.

No. 7393. Decided November 1, 1939.
Rehearing overruled December 20, 1939.
(132 S. W. 2d Series, 393.)

*Andrews, Kelley, Kurth & Campbell,* of Houston, and *Guinn & Guinn,* of Rusk, for plaintiff in error.

The contract of insurance sued upon providing that the insurance company would not be liable for the additional $3,000.00 accidental death benefit in event of insured's death resulting from homicide, and the evidence showing that insured was killed in a personal combat with another and the act was a homicide, within the meaning of the provision in the insurance policy, and that insured's death was the result of a homicide, it was error for the trial court to render judgment in plaintiff's favor, and in the Court of Civil Appeal's affirmance of said judgment. Southwestern Life Ins. Co. v. Green, 101 S. W. (2d) 594; McCrary v. New York Life Ins. Co., 84 Fed. (2d) 790; National Life & Acc. Co. v. Lopez, 207 S. W. 160.

*Norman & Norman,* of Rusk, *Smithdeal, Shook & Leftkowitz,* of Dallas, for defendant in error.

If the terms of the policy of insurance meant to exclude death by homicide, the term "homicide" has reference to intentional and culpable homicide and not to accidental or unintentional homicide. Walters v. Great National Life Ins. Co., 132 Texas 454, 124 S. W. (2d) 850; Day v. Interstate Life & Accident Co., 163 Tenn. 190, 42 S. W. (2d) 208; New York Life Ins. Co. v. Murdaugh, 94 Fed. (2d) 104.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

Mrs. Viola Murphy, defendant in error, was named as beneficiary in a policy of life insurance issued by Seaboard Life Insurance Company, plaintiff in error, on the life of Charles Calvin Murphy, her deceased husband. Upon his death she was paid $3,000.00, the full face value of the policy, but the Insurance Company denied liability upon a "Supplementary Agreement for Accidental Death Benefit," attached to the policy and this suit is upon such supplementary agreement only. The beneficiary recovered in the trial court and the case was affirmed by the Court of Civil Appeals. 111 S. W. (2d) 1221.

Briefly, Murphy came to his death by reason of being struck by a deputy constable named W. O. Farrish. There was a conflict in the testimony as to whether Farrish struck him with his fist or with a blackjack, but we are bound by the finding of the trial court that he struck him with his fist. As a result of the blow Murphy fell upon a concrete floor and the trial court found that in falling he struck his head on the floor, which was the sole proximate cause of his death. This latter finding is challenged, but we do not find it important to consider whether there is any evidence supporting same. There is evidence supporting the findings that Farrish knocked Murphy down on the concrete floor, and that he died shortly thereafter. Whether his death should be attributed to the blow, to the fall or to both is not important.

The opinion of the Court of Civil Appeals quotes at length from the findings of the trial judge. It is believed that it is sufficient to an understanding of our holdings herein to quote the following portions thereof:

"3. I find that neither Charles Calvin Murphy nor W. O. Farrish knew the other and that they were strangers at the time of the accident, which resulted in the death of the said Murphy, and that upon that occasion the following occurred: Murphy and one Murphy Acrey were sitting in the courtroom engaged in a conversation with respect to proceedings in the trial of a case, Farrish overheard this conversation and thought that it was intended to apply to him. He touched C. C. Murphy and requested him to come out of the courtroom, with which request Murphy complied, not knowing Farrish's purpose. I find that after they had gone out of the courtroom and were in the hallway, which has a concrete floor, and were near the entrance of the sheriff's office, Farrish stopped, turned, and pointing a finger in Murphy's face, made the statement that anybody who called him a stoolpigeon was a liar. I find that Murphy made no demonstration or effort to strike Farrish; but Farrish, thinking Murphy was about to strike him, assumed an attitude of defense, as did Murphy, and Farrish, thinking that Murphy was going to strike him, struck or struck at Murphy, and they engaged in a fist fight.

"4. I find that Murphy neither provoked nor intended to provoke a difficulty with Farrish; that neither of them was armed, except that Farrish had a blackjack, but that he did not strike Murphy with a blackjack, but merely struck him with his fist. I find that in striking Murphy, Farrish acted upon what appeared to him to be his proper self-defense, as

he thought Murphy was going to assault him with his fist. * * *
"* * *

"14. I find that Farrish neither intended nor expected to cause Murphy's death or any serious injury, and that he did not use any means reasonably calculated to bring about the death or serious injury of Murphy, and as to the said Farrish the death of Murphy was neither anticipated nor expected, and could not have been foreseen by him as a result of anything he did or intended to do, and that as to Farrish, Murphy's death was an accident."

The case turns upon the construction of the following provisions of the supplementary agreement:

"If * * * the Company shall receive due proof of death of the Insured which resulted directly, independently and exclusively of all other causes from bodily injuries sustained solely through external, violent and accidental means, and that the death occurred within ninety days of the accident, then the Company agrees to pay an additional amount of insurance equal to the face amount of the above numbered policy. * * *

"The term 'bodily injury' does not extend to and include * * * death resulting from homicide * * *."

An investigation of the authorities has led to the conclusion that we are not now called upon to construe this language as an original proposition. It has heretofore been construed and further writing upon the subject could hardly be justified.

■ Two questions are presented. The first is whether the death of Murphy resulted from a homicide, and the second is whether it resulted directly, independently and exclusively of all other causes from bodily injuries sustained solely through external, violent and accidental means. The first question must be resolved in the negative. In the recent case of Walters v. Great National Life Insurance Co., 132 Texas 454, 124 S. W. (2d) 850, decided since the writ was granted herein, the authorities are reviewed and the conclusion announced that the word "homicide," as used in a contract of this nature, is used in the sense of intentional homicide. The trial judge has found upon the evidence of probative force that this killing was unintentional. Further, in the case of Flournoy v. the State, 124 Texas Crim. Rep. 395, 63 S. W. (2d) 558, it was held that facts almost identical with those in the instant case would not support a conviction for aggravated assault, but that, if the person striking the blow causing the death was guilty

of any offense, it was none greater than simple assault and battery. Murphy's death did not result from homicide.

■ The second question must be answered in the affirmative, that is to say, under the findings of fact that the insured's death resulted directly, independently and exclusively of all other causes from bodily injuries sustained solely through external, violent and accidental means. Decisions by this Court establish the rule in this State to be that death is produced by, or as the result of, accidental means when it is not the natural and probable consequence of the means which produced it, or, stated differently, when death does not ordinarily follow and therefore cannot be reasonably anticipated as the result of the use of such means. International Travelers v. Francis, 119 Texas 1, 23 S. W. (2d) 282; Bryant v. Continental Casualty Co. 107 Texas 582, 182 S. W. 673; Pledger v. Business Men's Accident Ass'n. of Texas (Com. App.) 228 S. W. 110; See also Cooley's brief on Insurance (2d Ed.) Vol. 6, p. 5234, and Couch's Cyclopedia of Insurance, Vol. 5, p. 3976. The findings bring this case well within that rule.

Judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court November 1, 1939.

Rehearing overruled December 20, 1939.