Dickerson *v.* Prudential Insurance Company of America, Appellant.

Argued November 20, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Kendal H. Shoyer,* with him *Andrew C. Dana* and *Shoyer, Rosenberger, Highley & Burns,* for appellant.

*Benjamin H. Linton,* for appellee.

OPINION BY ARNOLD, J., March 5, 1946:

Assumpsit was brought for accidental death benefits on two insurance policies on the life of Joseph R. Dickerson, Jr. Defendant appeals from judgment on verdict for plaintiff.

The insured was born in 1920 and in 1938 became a hospital patient afflicted with an active, chronic Von Recklinghausen's Disease (multiple tumors in brain and elsewhere). From this he was blind, deaf and unable to walk. He could propel himself in a wheel chair. On the morning of April 7, 1940 this blind, deaf and helpless person was left unattended in his wheel chair in the hospital corridor leading to the recreation or sun room which he frequently visited. While in the wheel chair he fell down a flight of stairs, was injured and died in about twenty hours. The fall and the bodily injuries are admitted, and it is not contended that he intentionally fell or attempted suicide.

Both policies covenant to pay accidental death benefits if the insured ". . . has sustained bodily injury, solely through external, violent and accidental means . . . resulting in death." The policies contain no exclusion clause as to causes of death such as "sustained bodily injuries solely through external, violent and accidental means resulting directly and independently of all other causes in the death of the insured", as in *Speer v. Western & Southern Life Ins. Co.,* 158 Pa. Superior

Ct. 61, 43 A. 2d 562, nor an exclusion where the loss is "caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity . . .", as in *Lucas v. Metropolitan Ins. Co.*, 339 Pa. 277, 14 A. 2d 85.

April 7, 1940 was but another ordinary, monotonous day in the life of this invalid who was propelling his wheel chair toward the hospital sun room. He did not realize that the stairs were perilously close to his path. He anticipated no danger, having made the journey many times without difficulty. But now for the first time he misjudged the direction or distance and in his chair he plunged down the 'stairs and was seriously injured.

"If, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, . . . [it has] resulted through accidental means." [1]

The jury's verdict established these facts. The insured therefore sustained bodily injury solely through external, violent and accidental means.

Neither the condition of blindness nor inability to walk deprived the insured of the protection of this particular policy, and this is true though he might have avoided the accident had he not been blind. The policy contract could, but did not, exclude these conditions.

That death resulted from the fall was for the jury. Without objection [2] there was in evidence a certificate signed by the attending intern physician stating that there had been an autopsy; that the principal cause of death was a fractured skull which was due "to external causes (violence) . . . accident". This attending physician testified for the defendant that the fractured skull was but a guess and the autopsy was anticipated but not

---

[1] *Urian v. Equitable Life Assur. Soc.*, 310 Pa. 342, 165 A. 388, quoting above from U. S. Mut. Acc. Assn. v. Barry, 131 U.S. 100.

[2] Cf. *Foulkrod v. Standard Acc. Ins. Co.*, 343 Pa. 505, 23 A. 2d 430. If objections were made Cf. *Heffron v. Prudential Ins. Co.*, 137 Pa. Superior Ct. 69, 8 A. 2d 491.

yet performed, and that when performed it disclosed no fracture of the skull. This only went to the weight of plaintiff's testimony. The defendant offered a certified copy of the coroner's certificate of death stating that death was due to accident. Defendant produced oral testimony as to the observable facts from the autopsy, principally that the skull was *not* fractured. But the autopsy was conducted by the nervous-system pathologist of the same hospital, in the presence of the deceased's attending intern physician. It was conducted without notice to the deceased boy's father, although he was well known to the attending intern physician and to others of the hospital. The jury could consider whether the hospital staff and personnel had an interest to persuade others that the fall did not kill and did not fracture the skull, if the jury found that this blind patient had been left unattended and hence neglected.

Defendant contended that the insured would have died, according to experts, "in a few days" from natural causes even if no accident had occurred. The testimony showed that the insured could talk, could understand, and could propel his wheel chair immediately before the accident. After he fell he neither spoke nor regained consciousness but died in twenty hours. Neither actuarial tables nor professional opinions can fix, with any satisfying degree of even approximate definiteness, when a particular living person will die. Such estimates the jury was not bound to accept. In addition, the covenant of the policy was to pay in the event the "insured sustained bodily injuries through external, violent and accidental means . . . resulting in . . . death". Under this type of policy it was therefore immaterial that he might have soon died from natural causes even without the accidental injury.[3]

Judgment affirmed.

---

[3] Compare *Kelley v. Pittsburgh Casualty Company*, 256 Pa. 1, 100 A. 494; *Foulkrod v. Standard Acc. Ins. Co.*, 343 Pa. 505, 23 A. 2d 430. See also annotations in 131 A.L.R. 240.