LUCY L. KNOWLTON

*vs.*

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

Piscataquis.    Opinion, March 19, 1951.

*Francis A. Finnegan,*
*Abraham M. Rudman,* for plaintiff.

*James E. Mitchell,* for defendant.

SITTING: MURCHIE, C. J., MERRILL, NULTY, JJ. MANSER, CHAPMAN A. R. J. (THAXTER, FELLOWS AND WILLIAMSON JJ. did not sit.)

MERRILL, J. On exceptions to the ruling of a justice of the Superior Court refusing to accept, setting aside and rejecting a referees' report. The action, on two life insurance policies, is for the recovery of the additional benefit provided for in each policy in a sum of $2,500 for death caused by certain bodily injuries. The regular death benefit provided for in each of the policies had been paid and accepted without prejudice to the present rights of action, if any.

The plaintiff, Lucy L. Knowlton, was the beneficiary of both policies and was the widow of the insured, David L. Knowlton. The writ was dated February 4, 1949, returnable to the March 1949 Term of the Superior Court in the County of Piscataquis. At the return term the action was referred to referees with right of exceptions reserved to both parties as to questions of law. The referees filed a report in which they found for the plaintiff and that she was entitled to the additional benefits for which action was brought.

Each policy in a paragraph entitled "BENEFIT" provided for the payment of the additional benefit if "the Insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent, and accidental means." Each policy under a subsequent clause entitled "EXCEPTIONS AND EXCLUSIONS" provided that the additional benefit

should not be payable "if death results, directly or indirectly, or wholly or partially, or otherwise, from (1) any bodily or mental disease or infirmity,".

The referees accompanied their report with special findings, one of which was, "The death of David L. Knowlton did not result directly or indirectly or wholly or partially or otherwise from any bodily or mental disease or infirmity."

By written objections sufficient under Rule XXI the defendant challenged, among others, this finding of the referees as erroneous in law. The justice of the Superior Court by whom the objections were heard refused to accept, and set aside and rejected the referees' report. To this action by the presiding justice the plaintiff alleged exceptions. It is upon these exceptions that the case is before this court.

If the above special finding by the referees was erroneous as a matter of law, the ruling of the presiding justice was correct and the plaintiff's exceptions thereto must be overruled.

We said in *Benson* v. *Town of Newfield,* 136 Me. 23, 27:

> "Facts found in reference under Rule of Court are final when supported by any evidence. *Brunswick Coal & Lumber Co.* v. *Grows,* 134 Me. 293; 186 A. 705; *Staples* v. *Littlefield,* 132 Me. 91; 167 A. 171; *Hawkins* v. *Maine and New Hampshire Theaters Co.,* 132 Me. 1; 164 A. 628; *Kliman* v. *Dubuc,* 134 Me. 112; 182 A. 160; *The United Company and Fay & Scott* v. *Grinnell Canning Co.,* 134 Me. 118; 182 A. 415; *Richardson* v. *Lalumiere,* 134 Me. 224; 184 A. 392. From proven facts proper inferences may be drawn as a basis for determination of legal issues."

If the finding of the referee is based upon absence of proof of a fact, when the burden of proof with respect to such fact rests upon the party against whom such finding

is made, the finding of the referee is final unless the evidence establishes the existence of such fact as a matter of law.

We have in two cases indicated that the legal effect of the action of a single justice in finding that certain facts exist, or in finding that the existence of certain facts has not been proved is the same. In *Levesque* v. *Pelletier,* 144 Me. 245, 68 Atl. (2nd) 9, 11, we said:

> "The findings necessarily made by a sitting justice in equity of facts proved, or that there was a lack of proof, are not to be reversed on appeal unless the findings are clearly wrong."

This language was quoted with approval in *Tarbell* v. *Cook et al.,* 145 Me. 339, 75 Atl. (2nd) 800 at 801.

While the burden on the appellant in an equity appeal is only to show that the finding of the sitting justice was clearly wrong, no distinction is made as to the weight of his finding whether it be of facts found by him to have been proved or it be that there is a failure of proof of certain facts. This same general principle is applicable to the findings of referees. The same degree of finality is to be accorded to their findings whether such findings be that facts have been proved or that there be a lack of proof of facts.

The findings necessarily made by a referee (1) of facts proved or (2) that there was a lack of proof of facts are not to be set aside by the court unless such findings constitute error in law. With respect to the facts found proved, such finding will not be erroneous in law when supported by any evidence. With respect to a finding that there was a lack of proof of a fact, such finding will be final unless such finding of lack of proof constitutes an error in law. Such finding of lack of proof of a fact will not constitute an error in law if there is any evidence negativing the existence of such fact, or any evidence of facts from which a proper in-

ference may be drawn against the existence of such fact, nor unless the existence of such fact is the only proper inference which the referees could have drawn from all of the other facts necessarily found by them.

The insured, David L. Knowlton, was admitted to Bangor State Hospital on Friday, July 16, 1948, at about 4:15 p.m., suffering from acute chronic alcoholism, which is a disease. At the time of his admission he was somewhat intoxicated and tremulous. The deceased had commenced drinking heavily in the fall of 1945 and the winter of 1946. From sometime in May, 1946 until sometime in June of that year he was in a private hospital for treatment for alcoholism. In the fall of 1946 he started drinking heavily again and, except for a period of some three months when he was working as a fireman in a planing mill, he continued so to do until committed to Bangor State Hospital where he was deprived of all liquor. For the three months next preceding this commitment he had been drinking, on an average, about a fifth of spirituous or hard liquor, so-called, each day. In fact, his widow, the beneficiary, testified that she had purchased this quantity of whiskey for him, and did so in order to save his spending money for taxi fares in going to get the liquor himself.

On Sunday afternoon, following Knowlton's commitment on Friday, at about 4 p.m., an attendant in the hospital named Thompson was in a room just off the corridor of the hospital. He heard a noise, went into the corridor and saw Knowlton on the floor near the drinking fountain. The noise was caused by Knowlton's fall to the floor. The floor of this corridor was of hard wood with a waxed surface and as Thompson stated, "pretty much highly polished." He went to Knowlton and found him in a convulsive state which was consistent with a convulsion caused by alcoholism. No witness testified that he saw Knowlton fall. Previously, on the same Sunday morning, the same attendant

had left Knowlton sitting on the side of his bed eating his breakfast. A few minutes later he was called to Knowlton's room and found him on the floor beside the bed in a convulsive condition, consistent with a convulsion caused by alcoholism. At about 1:15 in the afternoon Knowlton had a seizure in the corridor near the drinking fountain. There is no evidence that he fell from that seizure, but Dr. O'Brien, who was called to the scene, testified that when he arrived, he found him on the floor, and that at that time he had a convulsion consistent with being caused by, and which he diagnosed as having been caused by alcoholism. The record is barren of any evidence of any other cause of these convulsions than the alcoholism, the disease from which Knowlton was suffering. After Knowlton was found in a convulsive condition on the floor at 4 p.m., he was removed to his bed in a semi-comatose condition. He subsequently became unconscious and died. An autopsy was performed and it was found that Knowlton had a fracture of the skull some six inches long and that he had suffered hemorrhages of the brain.

There was evidence in the record which would justify a finding by the referees that the death, as distinguished from the fall, was caused by the injuries which were caused by the fall or falls, and that alcoholism was not a cause of the death itself, as distinguished from the fall or falls which caused the injuries which in turn resulted in death. Such a finding was necessary to bring the death within the coverage of the clause in the policy entitled "BENEFIT". See *Bouchard* v. *Prudential Ins. Co.*, 135 Me. 238. In that case the disease itself was one of the contributing causes to the death, as distinguished from the accident. The question of whether the accident as distinguished from the death was caused by disease was not involved in that case, nor so far as we can find involved or decided in any other case decided by this court.

A finding, however, that the death, as distinguished from the fall which caused death, was not caused by disease is not determinative of the liability of the defendant under these policies.

It is well settled that if a fall produces injuries which in turn cause death, and such fall is caused by disease, the death results at least indirectly from the disease which causes the fall. In such case, the beneficiary cannot recover the additional benefit provided for in the policy, if the policy contains, as here, a provision that the additional benefit will not be payable "if death results, directly or indirectly, or wholly or partially, or otherwise, from (1) any bodily or mental disease or infirmity,". *Manufacturers' Accident Indemnity Co.* v. *Dorgan,* 58 Fed. 945. Multiplication of authorities upon this point would serve no useful purpose. This is but an application of the maxim, *causa causantis causa est causati,* the cause of the thing causing is the cause of the effect.

Although there is a conflict in the decisions as to whether in such a case as this the death is within the coverage of the "BENEFIT" clause of these policies, we need express no opinion thereon because we hold that if the fall, which causes the injuries which result in death, is caused by disease, the death is indirectly caused by disease within the exclusion of the above clause entitled "EXCEPTIONS AND EXCLUSIONS." One of the purposes of the "EXCEPTIONS AND EXCLUSIONS" clause is to deny the additional benefit for death indirectly caused by disease in such cases, even if a death so caused would be within the coverage of the "BENEFIT" clause. See *Bohaker* v. *Travelers Insurance Company,* 215 Mass. 32. There is also a conflict in the decisions as to whether under the clause entitled "EXCEPTIONS AND EXCLUSIONS" the burden is upon the plaintiff to show that the death was not so indirectly caused by disease or is upon the insurer to show that it was so

caused. On account of the reasons upon which we base our opinion, it is immaterial where this burden of proof lies and we need express no opinion thereon.

There is no evidence in this record which would justify a finding that the seizures which the plaintiff had on any one of the three occasions that he had the same, were caused by any other cause than the disease of alcoholism from which he was suffering. On the other hand, all of the evidence in the case shows that said seizures were caused by the alcoholism, and that the falls which he suffered were caused by said seizures. There is no evidence in the case from which it could be found that the insured's death was caused in any other way than as the result of a fall or falls caused by such seizure or seizures. The only conclusion that can be drawn from the evidence in this case is that the death was caused by a fall or falls which in turn was or were caused by disease, to wit, alcoholism. Measured by the rules hereinbefore set forth with respect to findings by referees, whether the burden of proof was upon the plaintiff to negative disease as a cause of the fall of the insured, or whether it was upon the defendant to show that the fall was caused by disease, the finding of the referees "The death of David L. Knowlton did not result directly or indirectly or wholly or partially or otherwise from any bodily or mental disease or infirmity" constituted legal error. This legal error by the referees in and of itself justified the action of the presiding justice when he refused to accept, and set aside and rejected the referees' report. This being true, we need not consider any of the other objections to the acceptance of the referees' report, nor any of the grounds of exceptions to the action of the presiding justice. *Kennebunk, Kennebunkport & W. W. D.* v. *Maine Turnpike Authority*, 145 Me. 35, 71 Atl. (2nd) 520 at 531.

*Exceptions overruled.*