WELLS *v.* PRUDENTIAL INSURANCE COMPANY
OF AMERICA.

1. INSURANCE—DOUBLE INDEMNITY—QUESTION FOR JURY—INSTRUC-
   TIONS.
   Jury must decide if death resulted from bodily injury and from
   external, violent, and accidental means, under evidence ad-
   duced in action for recovery under double indemnity provisions
   for accidental death in insurance policy, yet trial court must
   instruct jury as to the meaning of these terms.

2. SAME—"ACCIDENTAL" DEFINED—DOUBLE INDEMNITY.
   Term *accidental,* as used in double indemnity provision of life
   insurance policy, *held,* used in ordinary and popular sense, as
   meaning happening by chance, unexpectedly taking place, not
   according to usual course of things, or not as expected.

3. SAME—DEATH—ACCIDENTAL MEANS.
   Death, which follows from ordinary means, voluntarily employed,
   and in a not unusual or unexpected way, cannot be called
   result effected by accidental means for purposes of recovery
   under double indemnity provision for accidental death in
   insurance policy, but if in the act which precedes the injury,
   something unforeseen, unexpected, or unusual occurs which
   produces the injury, then injury has resulted through acci-
   dental means.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29A Am Jur, Insurance § 1165.
[2, 3] 29A Am Jur, Insurance §§ 1164–1166.
   Insurance: "accidental means" as distinguishable from "accident,"
   "accidental result," "accidental death," "accidental injury," etc.
   166 ALR 469.
[4] 29A Am Jur, Insurance § 1956.
[5] 29A Am Jur, Insurance §§ 1164–1166.
[6] 29 Am Jur, Insurance § 247.
[7] 5 Am Jur 2d, Appeal and Error § 891.

4. SAME—INSTRUCTION TO JURY—ACCIDENTAL DEATH.

> Instruction by trial court that if jury found that death of decedent was caused solely by cerebral concussion and that jury could not find for plaintiff if decedent's fall was caused by dizzy spell resulting from internal ailment, *held*, not proper under language of insurance policy which stated that death of insured must be result of bodily injuries, and not result, directly or indirectly, of bodily or mental infirmity, or disease of any form, and not proper where decedent suffered a dizzy spell, allegedly caused by arteriosclerosis, hypertension, or diabetes mellitus and resulting in cerebral concussion and hemorrhages, and, completely fortuitously, fell in a direction that decedent struck head on a heavy coffee table, causing brain concussion.

5. WORDS AND PHRASES—VOLUNTARY AND INVOLUNTARY ACTS—ACCIDENT.

> The result of a completely involuntary act, as well as the result of a voluntary act, can be accidental.

6. INSURANCE—CONSTRUCTION OF CONTRACT—INTENT OF PARTIES.

> Insurance contract's qualifying language in double indemnity provision for accidental death is interpreted to mean that parties intended efficient, proximate cause to be ultimate test of liability so that interpretation renders contract of some value to party who pays premium as well as party who carries risk.

7. APPEAL AND ERROR—INSTRUCTIONS—FAILURE TO OBJECT.

> Court of Appeals will reverse judgment based on erroneous instruction, even though appellant did not object on record, when trial judge prohibited counsel from making objections at conclusion of charge and no record was made of discussion in chambers prior to instruction of jury (GCR 1963, 516.2).

Appeal from Bay; Smith (Richard G.), J. Submitted Division 3 January 4, 1966, at Lansing. (Docket No. 499.) Decided May 11, 1966. Leave to appeal denied by Supreme Court August 25, 1966. See 378 Mich 728.

Complaint by Gertrude Wells against Prudential Insurance Company of America for benefits under a double indemnity provision of a life insurance policy issued to her husband. Verdict and judg-

ment for defendant.  Plaintiff appeals.  Reversed and remanded for new trial.

*Oscar W. Baker,* for plaintiff.

*Weadock & Montgomery* (*Rolland N. Montgomery,* of counsel) and *John D. MacKenzie,* for defendant.

McGregor, J.  In 1934, the plaintiff's decedent, Charles Wells, obtained a life insurance policy from the defendant company which included, in addition to the ordinary death benefits, an accidental death benefit, which provided double indemnity "upon receipt of due proof that the death of the insured occurred during the continuance of this policy while there was no default in the payment of premium, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in cases of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body and that such death occurred within 90 days of the accident, provided, however, that no accidental death benefit shall be payable in the death of the insured resulting * * * directly or indirectly from bodily or mental infirmity or disease in any form."

On August 22, 1961, while the policy was in force, Charles Wells had been typing at the dining room table in his home; he rose and started walking into the living room, and was in the vicinity of the end of a rug runner when he suddenly fell headlong and struck a heavy coffee table.  After the fall, it was discovered that he had a red spot on his forehead on the left side of his head, approximately the size of a half-dollar, and there were other bruises and contusions on his body.  After the fall, he had to

be helped to bed and undressed, because he was comatose. He remained in bed, his condition growing worse, until August 25, 1961, when his doctor, C. S. Tartar, was called. Because of Wells' serious condition, the doctor ordered his immediate removal to the hospital. The admitting diagnosis, as shown by the hospital admission sheet, was "cerebral vascular accident", and he was then found to have suffered a concussion. Charles Wells remained in the hospital until his death, on September 18, 1961, at the age of 76.

Upon the refusal of the defendant insurance company to pay the double indemnity benefit, under the insurance policy effective at decedent's death, the beneficiary, the deceased's widow, brought this action to recover such benefits. At the jury trial, evidence was introduced of the deceased's prior medical history. In 1954, the decedent had been found to have diabetes mellitus, but this condition was kept under control. He had been admitted to the hospital on May 8, 1961, with a diagnosis of diabetes, hypertension, and arteriosclerosis. The hospital record showed complaints of dizzy spells prior to the hospital admission. At no time, however, had the decedent ever fallen or staggered because of dizziness. Following the May, 1961, hospitalization, the decedent was in good condition for a man of his years, but under medication for hypertension and diabetes mellitus.

The medical testimony on the cause of the decedent's death was in conflict. Dr. Neal Moore testified that Charles Wells died, in his opinion, from cerebral concussion and hemorrhage of the brain induced by the fall in his home. This medical witness further testified that the prior existing diseases of the decedent were not a proximate cause of his death and that he would have died without the diseases. Dr. C. S. Tartar, who had been decedent's physician for

many years, testified that, in his opinion, death was caused by acute uremia, unrelated to the fall. This witness also testified that the fall could have been caused by a dizzy spell from a pre-existing high blood pressure, or arteriosclerosis, or by a ruptured artery from these diseases.

In his charge to the jury, after the judge had read the relevant provisions of the insurance policy, the trial judge continued his instructions to the jury, as follows:

"The term 'accident' can be described as an unforeseen event, occurring without the will or design of the person whose mere act causes it. It is something unexpected, unusual, and an undesigned occurrence.

"I charge you at this time, that in order for the plaintiff to recover, she must show:

"1. That Charles Wells had an accident as I defined it, of such a nature that it alone would have caused death.

"2. That there was a visible contusion or wound on the exterior of his body as the result of the accident.

"3. That the accident or fall was not caused by disease or infirmity.

"In other words, you are instructed that before you can find for the plaintiff, you must be satisfied that if he did fall *that his fall was not caused by disease or contributed to by a dizzy spell* arising out of his high blood pressure, diabetes, or arteriosclerosis.

"Therefore, if you find there was no accident or that it was caused or effected by disease, there can be no recovery on behalf of the plaintiff." (Emphasis supplied.)

Judgment was entered for the defendant on the jury verdict of no cause for action. Plaintiff brings this appeal contending that the court erred in in-

structing the jury that if they found the fall of the decedent was caused in any way by disease or bodily infirmity, they could not return a verdict for the plaintiff.

Double indemnity provisions, such as the one in the instant case, have been the subject of many Supreme Court cases. While it is jury matter whether or not death resulted from bodily injury and whether or not the injury resulted from an external, violent and accidental means, yet the court must instruct the jury as to the meaning of these terms. In *Ashley* v. *Agricultural Life Insurance Company of America* (1928), 241 Mich 441, 443, a case involving interpretation of a double-indemnity clause, it was held:

" 'The term "accidental" was used in the policy in its ordinary, popular sense, as meaning "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected"; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but, that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.' "[1]

The issue in *Ashley* was whether the death of the insured by freezing, when he became lost in the wilderness, entitled the beneficiary to double indemnity.

In *Wheeler* v. *Title Guaranty & Casualty Company of America* (1933), 265 Mich 296, 299, it was held:

" 'That if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs

[1] Quoting *United States Mutual Accident Association* v. *Barry*, 131 US 100 (9 S Ct 755, 33 L ed 60).—REPORTER.

which produces the injury, the injury has resulted through accidental means.' "[2]

In that case, the court held accidental a death resulting from an injection of nupercaine, a common anesthetic.

In *Hoff* v. *Mutual Life Insurance Company of America* (1934), 266 Mich 380, the insured had suffered paralysis and insensitivity of his lower limbs. An abrasion at the base of his spine resulted from being left on a bedpan for 4-1/2 hours while in the hospital. The resulting infection of the abrasion caused a fatal toxemia. The Supreme Court held that the injury was accidental within the language of a double indemnity clause of a life insurance policy, because the abrasion and infection were not the natural and probable consequences of the use of a bedpan.

"In order to recover double indemnity  *  *  * insured's death must have resulted proximately from a bodily injury which was effected directly and solely through an accidental cause or means, as determined from the facts of the particular case.  *  *  *

"The terms 'accident', 'accidental', or 'accidental means', as used in such a provision, must be interpreted according to the meaning given to them by the average man, as meaning happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected; an undesigned, untoward, and unlooked for event which was not expected or designed. More specifically, 'accidental means' are those means which produce results that are not their natural and probable consequences. Accordingly, if insured's death results from something unusual, which takes place without the foresight or expectation of insured, and which cannot be reasonably anticipated by him, it is death by ac-

---

[2] Quoting from *United States Mutual Accident Association* v. *Barry, supra.*—REPORTER.

cidental means, within a double indemnity clause."
45 CJS, Insurance, § 938, p 1076.

The issue in the instant case, more specifically, is
whether the injury which the decedent suffered when
he struck his head on the coffee table would be ac-
cidental, even if his fall was caused by some bodily
infirmity.   The language of the insurance contract
specifically states that in order for double indemnity
to be payable, the death of the insured must be the
result of bodily injuries, and not the result, directly
or indirectly, of bodily or mental infirmity or disease
in any form.   Under the instructions given by the
trial court to the jury, even if they had found that
the death of the decedent was caused solely by a
cerebral concussion, they could not find for the plain-
tiff if the decedent's fall to the floor was caused by
dizziness resulting from some internal ailment.   This
is not a fair construction of the language of the
insurance policy.   Even if the fall was caused by a
dizzy spell, it was completely fortuitous that the
decedent would fall in a certain direction and in such
a manner as to strike his head on a coffee table,
causing a brain concussion.   If the unintended result
of an intentional act can be accidental, so, too, can
the result of a completely involuntary act be acci-
dental.   The cause of the decedent's alleged brain
injury was not bodily infirmity, but the blow he re-
ceived when he struck the heavy coffee table.   The
blow was an entirely unexpected event.   Cerebral
concussions and resulting hemorrhages are not the
natural, probable and foreseeable result of arterio-
sclerosis, hypertension, or diabetes mellitus.   Such
a brain injury can be the result only of some ex-
ternal and violent means.   The trial court erred in
instructing the jury that if the fall was caused by
dizziness, the injury would not be accidental.   See
Annotation: Pre-existing physical condition as af-

fecting liability under accident policy or accident feature of life policy, 84 ALR2d 176, 247.

"In most cases a policy of this character would be of little or no value to the insured if the limiting language be literally interpreted as claimed by the defendant.    Death from an external injury, unless instantaneous, is usually the result of various concurring causes.    *   *   *   These are conditions rather than causes.   If such insurance-contracts are to be of any value to the man who pays for the risk assumed, a construction as fair and reasonable as the limiting language will permit should be placed upon them.   *   *   *

"I am of the opinion that the qualifying language of the contract may properly be interpreted to mean that the parties intended efficient, proximate cause to be the ultimate test of liability.   This interpretation renders the contract of some substantial value to the man who pays the premium as well as to the party who carries the risk." *Kangas* v. *New York Life Insurance Co.* (1923), 223 Mich 238, 243, 244. Quoted with approval in *Nickola* v. *United Commercial Travellers of America* (1964), 372 Mich 600, 605.

Counsel for the defendant has argued strenuously that plaintiff has waived the error alleged on the charge to the jury.   The transcript shows what occurred at the conclusion of the judge's charge:

"*The Court:*   *   *   *   Now, before I swear the court officer and give this case to the jury, was there anything you would like to bring to my attention? I would suggest that it be done at the bench.   Any corrections or additions other than those corrections which have been presented to me by way of instructions?

"*Mr. Baker:* You don't want us to state if we have any disagreement with anything you have said in the instructions?   We discussed that in chambers.

"*The Court:* No, that is true, but have I omitted anything other than what I have indicated to you I would instruct on?

"*Mr. Baker:* Not that I recall, Your Honor, at this time.

"*Mr. Montgomery:* We stand in the same position. There will be disagreement, but you have covered the points."

Since the trial judge prohibited counsel from making objections at the conclusion of the charge, and the record does not show what objections were raised in the discussion in chambers, this Court will allow the error to be raised on appeal. This Court has ruled on this problem before:

"Although the appellant failed to comply with GCR 1963, 516.2, he is not precluded from making such assignments of error on appeal because the record does not show that the court complied with GCR 1963, 516.1 in affording the parties the opportunity to object." *Herndon* v. *Woodmen of the World Life Insurance Company* (1965), 1 Mich App 141, 144, quoted with approval in *Milauckas* v. *Meyer* (1965), 1 Mich App 500, 507.

GCR 1963, 516.2 contemplates that the counsel for both sides will have the opportunity to make their objections to the charge to the jury on the record, and out of the hearing of the jury if so requested. Since the trial judge did not allow the making of such record, the rule of the *Herndon Case* applies.

The judgment is reversed and the case is remanded for a new trial. Costs are awarded to the plaintiff-appellant.

T. G. Kavanagh, P. J., and Burns, J., concurred.