**NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Richard E. FRANKLIN et ux., Appellees.**

No. 933.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 6, 1974.

Rehearing Denied Feb. 27, 1974.

James H. Lehmann, Jr., Kennerly, Woodard, Hall, McCrory & Henry, Houston, for appellant.

Ira D. Watrous, Bray, Ashley, Shaver & Watrous, Houston, for appellees.

CURTISS BROWN, Justice.

This is a suit to recover benefits under two policies of life insurance.

Appellees, Richard E. Franklin and his wife, Doris, brought this suit against appellant National Life and Accident Insurance Company (the Company). The Company issued two policies on the life of Larry W. Fife, the son of Doris Franklin by a former marriage. The two policies, one issued in 1962 and one issued in 1966, provide a death benefit plus an additional accidental death benefit. Doris Franklin is the beneficiary under both policies. The basic benefits have been paid, and this suit concerns only the accidental death benefits. In addition, appellees sued for the statutory twelve percent penalty and attorney's fees under Tex.Ins.Code Ann. art. 3.62 (1963) V.A.T.S. Trial was to a jury on special issues, and judgment based on the jury verdict was entered for appellees.

The insured, Larry W. Fife (Fife), died under unusual circumstances. He was known to be subject to mild epileptic seizures and had been under a doctor's treatment for about a year. Fife was found dead in his apartment lying over the edge of the bathtub. His legs were on the bathroom floor and his head and one arm hung into the tub. The water was running, but the drain was open, so there was very little wâter in the tub. The autopsy showed that Fife's lungs and cranial cavity were filled with water, and the examiner's report indicated accidental death by drowning. It is not explained, however, how he could have drowned in a virtually empty tub. The report further indicates that Fife may have been having a seizure at or near the time of death. His tongue was protruding from his mouth and had been bitten, the veins in his neck were distended, and his head was in a contorted position.

The 1962 policy provides accidental death benefits if death results:

directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, . . . ; and provided further that no such death benefit shall be payable if death (i) results from or is contributed to by any disease or mental infirmity, or medical or surgical treatment thereof, . . . .

The language of the 1966 policy is almost identical, and any differences do not change its meaning.

The case was submitted on two special issues, in which the jury found (1) that Fife's death resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent, and accidental means, and (2) that it was not contributed to by disease or mental infirmity. Appellant attacks both findings on no evidence and insufficient evidence points of error.

The initial question is whether the jury verdict that Fife died solely by accidental means is supported. This record does not compel the conclusion that his fall was caused by a seizure. There is evidence of a seizure but there is no causal link with the fall. We sustain the jury's first finding.

■ Death is caused by accidental means "when it is not the natural and probable consequence of the means which produced it. . . ." Seaboard Life Ins. Co. v. Murphy, 134 Tex. 165, 132 S.W.2d 393, 395 (Tex. Comm'n App. 1939, opinion adopted). Fife's policies further require that the accident be the independent cause of death. This has been construed to require a showing that the accident was the sole proximate cause. Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110, 112 (Tex.Sup.1965). Nevertheless, recovery is not defeated by a preexisting condition or disorder which is so remote in the chain of causation that it does not materially contribute to a death or injury. Stroburg v. Insurance Company of North America, 464 S.W.2d 827, 829 (Tex.Sup.1971); Mutual Benefit Health & Accident Ass'n v. Hudman, supra, 398 S. W.2d at 114.

■ The question to be decided on this point, then, is the causal relationship between Fife's epilepsy and his death. If we assume that epilepsy caused the fall, that does not mean it caused his death.

The testimony of Dr. Green, the physician who performed the autopsy, was that Fife died by drowning. On causation he testified as follows:

Yes, sir. It's my opinion, based upon my own findings and information which I received from reputable sources, that, in all probability, Mr. Fife did suffer an epileptic seizure causing him to lose consciousness, as is very common in this disease, and that this caused him to collapse in such a fashion that—although we have not brought out, since I've been here, how the drowning actually took place, or where—that it did, in fact, cause him to get into such a position that he, in fact, drowned.

As we view the evidence, epilepsy may have caused the accident, i. e. the fall, but it did not cause the death by drowning. The fact that death comes about in a way that is not a "natural and probable consequence" of the hazards of the disease permits the conclusion that it is caused by accidental means. Seaboard Life Ins. Co. v. Murphy, supra. The epilepsy was merely a cause of a cause and was therefore too remote to bar recovery. Stroburg v. Insurance Company of North America, supra.

■ The second question in the case is whether the verdict that Fife's death did not fall within the policy exclusion as resulting from or being contributed to by any disease has support in the record. Death was caused by drowning rather than epilepsy; therefore, it did not result from any disease. The more difficult question is whether the evidence compels the conclusion that the disease contributed to the death.

The jury's verdict may be sustained on the assumption that it found the epilepsy had nothing to do with Fife's death. If it is assumed, however, that Fife fell during a seizure, we have concluded that the epilepsy did not contribute to his death in such a way as to exclude coverage as a matter of law. It is true, in a non-legal

**768**

sense, that a long chain of events may contribute to a final result. Nevertheless, we are here concerned with legal causation, "a limitation of duty in terms of risks." Green and Smith, Negligence, No-Fault, and Jury Trial—II, 50 Texas L.Rev. 1297, 1301 (1972). This article analyzes the recent decision of the Texas Supreme Court in Stroburg v. Insurance Company of North America, *supra*. In that case the beneficiary of an accidental death and injury policy sought to recover for the death of his father. The deceased had suffered from emphysema and an ulcer before the automobile accident in which he was killed. The jury found his death was caused solely by accidental means and that neither the ulcer nor the emphysema contributed to his death. Judgment was entered for plaintiffs. The court of civil appeals reversed, holding that the finding of death by accidental means was without support in the evidence. The Supreme Court reversed this finding of no evidence and remanded for a consideration of insufficiency points. The Court went on, however, to discuss the disease exclusion in the policy, which excluded loss caused by or resulting from illness or disease. The Court recognized a distinction between two basic types of exclusions. The first type is that in the Stroburg policy. The second is one excluding loss caused "wholly or partly, directly or indirectly, from disease. . . ." After a consideration of cases involving these two types of provisions, the Court concluded that the Stroburg provision excluded liability only when the itemized risks were a proximate rather than an indirect or remote cause of the loss.

Turning to the language of Fife's policies, we find that it falls within the Stroburg rule. The words "contributed to" do not serve to allow us to look back along the chain of causation to a remote cause or a cause of a cause. The words "directly or indirectly" would serve this purpose, but "contributed to" does not avoid the proximate cause requirement of Stroburg. The

true effect of "contributed to" is that the disease need only be a proximate cause rather than the *sole* proximate cause to satisfy the exclusion. Since the epilepsy was, at most, a remote cause, the policy exclusion is inapplicable.

Under either interpretation of the evidence as to whether epilepsy caused Fife's fall, plaintiffs are entitled to recover under the policies. We have considered the "insufficiency" points as well as the "no evidence" points under appropriate standards of review. Appellant's points are overruled. The judgment of the trial court is affirmed.

Affirmed.