587 P.2d 267

**Marjorie P. HUFF, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, a Connecticut Corporation, Appellee.**

**No. 1 CA–CIV 3760.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 2, 1978.

Robbins, Green, O'Grady & Abbuhl, P.A., Philip A. Robbins, Harriet C. Babbitt, Phoenix, for appellant.

Black, Robertshaw, Frederick, Copple & Wright, P.C., Steven D. Copple, Phoenix, for appellee.

## OPINION

OGG, Judge.

This appeal results from the trial court's denial of a motion for summary judgment motion filed by the plaintiff/appellant Marjorie P. Huff and the granting of a cross-motion for summary judgment filed by the defendant/appellee, Aetna Life Insurance Company. The underlying action was filed by Marjorie Huff as beneficiary of a group accident policy issued by Aetna under which her deceased husband, James F. Huff, was insured.

The cross-motions were presented to the trial court on the following stipulated facts:

1. Mr. Huff, while operating his motor vehicle, was involved in a one-car automobile collision on September 9, 1973.

2. While operating his motor vehicle, Mr. Huff suffered an acute myocardial infarction which caused Mr. Huff to lose control of his vehicle directly resulting in the automobile accident. Said coronary was the sole cause of the automobile collision.

3. At the moment of impact, the force of the collision broke one of Mr. Huff's ribs and caused the rib to perforate his heart causing his death.

4. Although Mr. Huff's heart attack caused him to lose control of the automobile and resulted in the crash, Mr. Huff was alive at the moment of impact and until his rib perforated his heart.

5. But for the perforation of Mr. Huff's heart by his rib, he may or may not have survived the acute myocardial infarction, would not have died at the exact moment that he did, and may have lived for several hours, several weeks, or several years had there been no automobile crash.

6. The Aetna Life Insurance Company group policy No. GC–313233 issued to Emerson Electric Company which was supplied to plaintiff's attorney in response to a request to produce is the policy that was in force and effect on the date of Mr. Huff's death and Mr. Huff was an insured under the policy. Mr. Huff's acute myocardial infarction is a disease or bodily infirmity as those terms are used in the Aetna group policy.

The narrow issue presented on this appeal is whether the language of Aetna's exclusionary clause is sufficient to bar recovery when the "disease or bodily infirmity" (in this case the myocardial infarction) was the remote or indirect cause rather than the proximate or direct cause of the "loss" to or death of Mr. Huff.

The case is one of first impression in Arizona although numerous other jurisdictions have dealt with similarly worded exclusions.[1] However, the vast majority of these decisions have dealt with the issue of whether a preexisting disease or bodily infirmity combined with an injury sustained in an accident (concurrent cause) to produce the loss of which compensation was sought. Indeed, our own Supreme Court has dealt with this latter issue in *New York Life Insurance Company v. Greber,* 55 Ariz. 261, 100 P.2d 987 (1940); *Dickerson v. Hartford*

---

1. See 84 A.L.R.2d 176 and 21 Appleman, Insurance Law and Practice, § 12483 (1947).

*Accident & Indemnity Co.,* 56 Ariz. 70, 105 P.2d 517 (1940); *Greber v. New York Life Insurance Co.,* 61 Ariz. 341, 149 P.2d 671 (1944) and *Watkins v. Underwriters at Lloyds, London,* 107 Ariz. 56, 481 P.2d 849 (1971). None of these Arizona opinions involved an allegation that the preexisting disease or physical disability (remote cause) caused the accident which in turn caused the insured to receive the injuries (proximate or direct cause) for which a claim was made.

Here, however, it has been stipulated that the direct or proximate cause of Mr. Huff's death was an injury sustained in the accident. Additionally, none of the opinions cited to this court and none which this court has found in its own research have involved construction of the same language as that contained in the Aetna exclusion.

The relevant portion of Aetna's policy is *Section 2. Exclusions,* which provides:

The insurance provided under this Title does not include, and no payment shall be made for, any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the following excluded risks, *even though the proximate or precipitating cause of loss is accidental bodily injury:*

(a) bodily or mental infirmity; or

(b) disease, ptomaines or bacterial infection, of any kind, except a pus-forming infection attributable solely to and occurring as the proximate result of an injury not excluded by this Title; or

(c) medical or surgical treatment, except a loss covered by this Title which results directly from a surgical operation made necessary solely by an injury not excluded by this Title and performed within ninety days after the date of such injury; or

(d) war or any act of war (whether war is declared or not). [Emphasis added]

Before entering into our analysis of Aetna's policy, we will bring the language of the stipulated facts in line with the language most frequently used in opinions discussing this area and focus on the facts necessary to this court's determination. We believe the facts may be restated as follows:

1. Mr. Huff died an accidental death;
2. Mr. Huff's accident was caused solely by an acute myocardial infarction;
3. The myocardial infarction was the remote or indirect cause of Mr. Huff's death;
4. The direct or proximate cause of Mr. Huff's death was the perforation of his heart by a rib;
5. That Mr. Huff was an insured under the group Aetna policy issued to his employer which policy was in effect on the date of Mr. Huff's death;
6. Mr. Huff's acute myocardial infarction is a disease or bodily infirmity within the meaning of Aetna's policy.

The court's focus here must be on whether the policy effectively and unambiguously disclaims coverage where the disease or bodily infirmity suffered by the insured was not the proximate cause of the loss. It has not been contested, as well it could not be, that absent such unambiguous language the courts of this country uniformly would not bar recovery under the policy when the preexisting infirmity merely led to an accident which in turn produced a distinct injury or loss. *See,* Note 1, supra.

Addressing the language of the exclusion absent the clause which we have emphasized, we find that although this precise language is not present in opinions presented to this court, several opinions which will be discussed subsequently confront the issue before this court in connection with exclusions stating that benefits were not payable if the loss resulted "directly or indirectly" from a physical or mental infirmity or disease. Because the phrase "caused or contributed to by or as a consequence of" is the substantial equivalent of "directly or indirectly,"[2] we believe the opinions discussing that phrase are useful in our analysis.

---

2. Webster's Third International Dictionary (unabridged) 483 (1969) defines *Consequential* as:

"of the nature of secondary result; Indirect." It further defines *Consequential Loss* as "an indirect or secondary loss . . . ."

Because of this equivalence, were the introductory paragraph of the exclusion in question to conclude absent the emphasized clause, this court in reaching its determination would be confronted with a direct split of authority on this issue. Two of the cases which clearly delineate this split in authority are *Knowlton v. John Hancock Mutual Life Insurance Co.*, 146 Me. 220, 79 A.2d 581 (1951), and *Salisbury v. John Hancock Mutual Life Insurance Co.*, 259 Or. 453, 486 P.2d 1279 (1971). In *Knowlton*, the insured had a convulsion caused by a disease (alcoholism). As a result of the convulsion, he fell, striking his head. Because of the blow to the head the insured received injuries resulting in his death. A finding was entered by a referee that the death was related solely to the fall and was not caused by a disease. The superior court set aside this finding, stating that it was unsupported by the evidence, and an appeal followed to the Supreme Judicial Court of Maine.

The policy in question provided that benefits would not be payable "if death results, directly or indirectly, or wholly or partially, or otherwise, from (1) any bodily or mental disease or infirmity." The court, in affirming, stated the following at 146 Me. 226, 79 A.2d 584:

It is well settled that if a fall produces injuries which in turn cause death, and such a fall is caused by disease, the death results at least indirectly from the disease which causes the fall. In such case, the beneficiary cannot recover the additional benefit provided for in the policy, if the policy contains, as here, a provision that the additional benefit will not be payable 'if death results, directly or indirectly, or

wholly or partially, or otherwise, from (1) any bodily or mental disease or infirmity.'[3]

In *Salisbury,* the Supreme Court of Oregon construed the double indemnity provisions of a life policy issued by John Hancock. The policy language was almost identical to that presented to the Supreme Judicial Court of Maine in the *Knowlton* case. Factually, the insured had cancer of the brain which rendered him weak, spastic and unable to control his movements fully. He was confined to the bed by use of siderails and a chest strap. The trial court found that in attempting to get up he had become entangled in his strap whereby he died from asphyxiation caused by strangling.

The John Hancock policy excluded coverage for accidental death if the death resulted "directly or indirectly" from a preexisting mental infirmity or disease. In spite of the "directly or indirectly" language, the Oregon court held that the exclusion was related to the cause of death and not to the cause of the accident. In doing so, the court overruled a prior opinion directly to the contrary and stated at 259 Or. 456, 486 P.2d 1280:

If it was the intention of the defendant that the policy not cover death caused solely as a result of injuries suffered in an accident where a cause of the accident is infirmity or disease, it should have more clearly expressed such intention.

We need not reach a determination herein of which line of reasoning we would follow inasmuch as the introductory paragraph of the Aetna policy in question goes beyond the "caused, contributed to by, or as a consequence of" language by concluding:

---

**3.** The Supreme Court of Texas in the opinion of *Stroburg v. Insurance Company of North America*, 464 S.W.2d 827 (Tex.1971), has clearly indicated that it follows the rationale of *Knowlton*. In *Stroburg*, the insured lost consciousness as a result of a bleeding ulcer. While unconscious his automobile crashed, producing bodily injury resulting in his death. The policy in question did not contain the language "direct or indirect" in its exclusionary clause and the Supreme Court reversed a lower court holding in favor of the carrier. In an

opinion setting forth a good analysis of this area, the court indicated that had the exclusions section of the policy contained the language "directly or indirectly" rather than simply stating "caused by or resulting from" they would have felt free to look beyond the proximate cause of death to the remote cause—the bleeding ulcer. *See, also, National Life & Accident Insurance Co. v. Franklin*, 506 S.W.2d 765 (Tex.Civ.App.1974) (an epileptic seizure leading to the insured's drowning).

. . . even though the proximate or precipitating cause of loss is accidental bodily injury.

Here, Aetna has clearly indicated its exclusion is applicable to both proximate and remote causes such as Mr. Huff's unfortunate heart attack. Although, as the Oregon Court holds and counsel for the plaintiff argues, the intent could have perhaps been more "clearly expressed;" to hold otherwise would effectively read this latter clause out of the policy. Here, the carrier not only provided for "indirect" causes but went further and made it clear that coverage was excluded even though the "proximate" or direct cause of the loss was the accident.

The judgment is affirmed.

JACOBSON, P. J., and SCHROEDER, J., concur.