Steven S. ORMAN, Beneficiary under the insurance policy of Carmen L. Orman, Respondent,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, etc., Appellant.

No. 50586.

Supreme Court of Minnesota.

July 3, 1980.

Thompson, Neilsen, Klaverkamp & James, Minneapolis, for appellant.

Edward M. Cohen & Associates, St. Louis Park, for respondent.

KELLY, Justice.

Defendant Prudential Insurance Company of America (Prudential) appeals from the decision of the trial court awarding Steven S. Orman, beneficiary of a policy insuring the life of Carmen L. Orman, $5,000 in accidental death benefits.

The record below reveals the following. On August 21, 1975, Carmen L. Orman executed an insurance policy with defendant whereby defendant agreed to pay her beneficiary, Steven S. Orman, $5,000 upon her death or $10,000 upon her accidental death. On February 9, 1976, Steven Orman found his wife, 19-year-old Carmen Orman, lying face down in her bathtub, dead, with the shower running. Her left leg was over the tub and she had bruises and abrasions above both her eyes and face.

On April 2, 1976, defendant paid to the beneficiary, Orman, $5,074.46 representing the face amount of the policy, interest and premium adjustments. Defendant refused to pay accidental death benefits on the ground that the cause of death was excluded under the terms of the policy. This exclusion provides:

> No payment shall be made under this Benefit [Accidental death benefit] for any loss caused or contributed to by * * bodily * * * infirmity or disease * * *.

The autopsy report on Carmen Orman was introduced at trial. It contained the following statement:

> It is felt the deceased probably had a subarachnoid hemorrhage causing loss of consciousness and fell into the tub where the terminal event was drowning.

Dr. John Plunkett, a board certified pathologist and deputy medical examiner in Hennepin County, testified at trial although he was not personally involved in the conduct of the autopsy. He stated that the autopsy was performed by Dr. K. Osterberg on February 11, 1976. He testified that Carmen Orman died as a result of drowning and that the "drowning was precipitated by the rupture or break of an aneurysm in the head." He further testified that the aneurysm was $\frac{3}{16}$ths of an inch wide and that the one-half ounce of blood trace would have indicated that the aneurysm would not alone have been fatal. Therefore, in his opinion, the decedent was alive at the time she fell into the bathtub. He stated that his office classified the death as accidental because the immediate cause of death was drowning which is not a natural disease process. Finally, he testified that although aneurysms are found in approximately one to two percent of the general population, aneurysms are nevertheless classified as diseases by the medical profession.

The certificate of death, which was also introduced at trial, indicated that the immediate cause of death was "probable drowning due to fall into bathtub" as a consequence of "loss of consciousness," in turn a consequence of "subarachnoid hemorrhage due to ruptured aneurysm of anterior communicating artery."

The trial court held that the aneurysm was not a "bodily disease or infirmity," apparently relying on expert testimony to the effect that berry aneurysms are found within one or two percent of the population and that these aneurysms often do not burst. The court also concluded that Carmen Orman's death was the result of an accidental drowning. The court held that

the death would entitle the beneficiary to recover the accidental death benefits under the terms of the insured's life insurance policy and directed the entry of judgment in favor of the beneficiary, Steven Orman.

Defendant contends on appeal, as it did at trial, that because the decedent's death was the direct result of a chain of events set in motion by the rupture of an aneurysm, her death was caused or contributed by a bodily disease or infirmity. It argues, therefore, that this cause triggered the exclusion's applicability.

In light of the medical expert's testimony that aneurysms are not healthy conditions and they are in fact classified as diseases by the medical profession, we hold that the district court committed clear error in holding to the contrary. *Hume v. Standard Life and Accident Insurance Co.*, 365 P.2d 387 (Okl.1961); *Sugarman v. New England Mutual Life Insurance Co.*, 201 F.Supp. 759, 762 (E.D.N.Y.1962).

The fact that the aneurysm in this case was a disease does not necessarily compel the conclusion that coverage is not afforded by the policy. Defendant does not dispute the fact that the immediate cause of the decedent's death was drowning. The undisputed evidence at trial indicated that the decedent died as a result of drowning. That drowning is an unforeseen, unexpected or unusual event, and therefore is an "accident" or an "accidental means" of death within the meaning of the policy, cannot be seriously challenged. *See Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 914–15 (Minn.1979). Instead, defendant contends that the aneurysm "caused or contributed" to the decedent's death thus excluding accidental death benefit coverage. We cannot agree with defendant's proposed construction of the exclusion in this case. The undisputed evidence at trial indicated that the bursting of the aneurysm would not have caused her death. It was a mere fortuity that the decedent stood over a bathtub full of water at the time the aneurysm burst and rendered her unconscious. In other words, the aneurysm may have contributed to the accident, but it did not contribute to the death. In such circumstances, the aneurysm is simply too remote to be deemed a direct or contributing cause of death.

Other courts have faced factually similar scenarios and have held that the beneficiary was entitled to accidental death benefits. For example, in *National Life and Accident Insurance Co. v. Franklin*, 506 S.W.2d 765, 766 (Tex.Civ.App.1974), the insurance policy excluded coverage where death "results from or is contributed to by any disease." The evidence indicated that the decedent, who was an epileptic, suffered a seizure as he stood over his bathtub. He then fell into the tub and drowned. *Id.* The court held that "[t]he words 'contributed to' do not serve to allow us to look back along the chain of causation to a remote cause or a cause of a cause." *Id.* at 768. Therefore, the court held that the beneficiary was entitled to accidental death benefits.

Similarly, in *Salisbury v. John Hancock Mutual Life Insurance Co.*, 259 Or. 453, 454, 486 P.2d 1279, 1280 (1971) the decedent had cancer of the brain which "rendered him weak, spastic, and unable to control his movements fully or to stand by himself." He was confined to a nursing home. When he attempted to get out of bed he became entangled with a chest strap used to keep him from getting out of bed. The court construed a policy excluding coverage if death resulted "directly or indirectly, or wholly or partially, from (1) Any * * * disease existing before * * * the accidental injury." Id. at 455, 486 P.2d at 1280. The court stated:

In the present situation, death resulted solely from asphyxiation caused by strangulation, and was a death " * * * resulting directly and solely from * * * an accidental injury * * *." The exclusion from coverage relates to the cause of death—not to a cause of the accident. Decedent died from strangulation—not cancer. For cases in which the same result is reached in the face of not always identical but somewhat similar language, see: *Manufacturers' Accident Indemnity Co. v. Dorgan*, 58 F. 945, 954 (6th Cir. 1893), 22 L.R.A. 620; *Sturm v. Employers' Liability Assur. Corp. Ltd.*, 212 Ill. App. 354, 364 (1918); *Wells v. Prudential*

*Insurance Co.*, 3 Mich.App. 220, 142 N.W.2d 57 (1966); *Dickerson v. Prudential Ins. Co.*, 158 Pa.Super. 596, 46 A.2d 33 (1946); *Speer v. West. & South. Life Ins. Co.*, 158 Pa.Super. 61, 43 A.2d 562, 566 (1945).

*Id.* at 455–56, 486 P.2d at 1280. We recognize that there is authority to the contrary. *See e. g., Jackson v. Southland Life Insurance Co.*, 239 Ark. 576, 393 S.W.2d 233 (1965); *Smith v. Peoples Life Insurance Co.*, 222 A.2d 253 (D.C.App.1966). However, we cannot agree that where the policy language excluding coverage where the loss, *death*, is contributed to by a bodily disease applies to a situation in which the disease causes the accident rather than death.

Affirmed.