## Foulkrod *v.* Standard Accident Insurance Company, Appellant.

Argued December 4, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*G. A. Troutman,* of *McWilliams, Wagoner & Troutman,* for appellant.

*David F. Maxwell,* with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellee.

OPINION BY MR. JUSTICE DREW, January 5, 1942:

This action in assumpsit was instituted by Gertrude A. Foulkrod to recover $5,250 for the accidental death of her husband, the insured, upon a policy of insurance issued by the Standard Accident Insurance Company, defendant. The policy contained a clause providing for the payment of that amount for death "effected directly, exclusively and independently of all other causes, through accidental means". The jury found for plaintiff. After motions for judgment n. o. v. and a new trial had been overruled and judgment entered upon the verdict, this appeal by defendant was taken.

In her statement of claim, plaintiff alleges that her husband, Dr. Collin Foulkrod, died on November 16, 1939, and that his death was caused by an accident within the terms of the policy; that on October 14, 1939, he accidently fell from a stool on which he was sitting, and that in the course of such fall he suffered a severe blow on the anterior wall of his chest, causing internal hemorrhage, acute cardiac dilatation and subsequent

collapse, followed by death. In its affidavit of defense, defendant denies these allegation, and avers that, if said assured did sustain any injuries whatever, they were in no way the cause of death; and further alleges that the policy was not in force and effect for the reason that insured did not notify it of the accident of October 14, 1939, within the period required by the insurance contract.

In considering the action of the learned court below in overruling the motion for judgment n. o. v., we must view the testimony in the light most advantageous to plaintiff, giving her the benefit of every fact and inference that might reasonably be deduced from the evidence, and resolving all conflicts in her favor: *Heath v. Klosterman*, 343 Pa. 501. From the testimony offered by plaintiff, it appears that insured, a physician of the age of sixty-five years, was injured while in his laboratory on October 14, 1939, as the result of falling to the floor from a stool, upon which he was sitting, when its support broke suddenly, causing him to receive a blow on the chest. For over three weeks thereafter, despite his injury, insured continued to perform the duties of his profession. However, during this period, he was unable to walk or climb stairs with his usual agility, grew tired easily, lost color and complained somewhat of pain. On November 9, 1939, he suffered a severe heart collapse. Dr. Griffith, a heart specialist who had attended him following his collapse, testifying for plaintiff, stated that insured's death was the result of a spreading coronary thrombosis, caused by injury to the myocardium from a blow on the chest. Dr. Custer, a pathologist called by plaintiff, stated that the autopsy and the history were entirely consistent with the conclusion reached by Dr. Griffith. There was also testimony that insured was apparently in good health prior to the accident, and had not theretofore been in bad health. Therefore, it clearly appears that there was sufficient evidence upon which to predicate a verdict for plaintiff under the terms of the insurance contract.

Defendant argues that since insured sustained no visible injuries of any kind, the medical testimony upon which plaintiff relies was insufficient to show any causal relationship between the injury and the death. In other words, defendant contends that Dr. Griffith, plaintiff's principal medical witness, testified to a conclusion not supported by the record. A careful study of the evidence produced by plaintiff shows that there is no merit in this contention. Insured's servant, Mrs. Cunningham, stated: "He [insured] had this fall and I went in. I heard the noise and I went in to see what the trouble was. He was getting himself together, getting up off the floor, and I looked and the stool had broken into two and he said, 'I gave myself an awful jar in the chest.'" Plaintiff herself testified that shortly after the accident: "I was in the living room next to the dining room, and he came in and seemed all shaken, very much shaken, and I asked what was the matter, and he told me about this fall" and "He said the stool had broken and had thrown him to the floor, and it had hit him in the chest." Defendant objected to the presentation of this testimony of plaintiff, and the trial judge stated he would permit its introduction, subject to its being stricken from the record later, if it were not shown to be part of the res gestæ. Counsel for defendant later stated to the court, however: "At this time, your Honor, I move to strike out from Mrs. Foulkrod's testimony any statements made as to the occurrence of an accident, *except those made to her by the decedent.* Your Honor reserved that until the testimony, as I understood, of the occurrence was in." (Italics added). The court replied: "I think that ought to be stricken. I will grant you [plaintiff's counsel] an exception on that." Thus, so far as the record discloses, defendant's counsel acquiesced in the admission of the statements made by the insured to his wife that he had received a blow on the chest when he was thrown to the floor by the breaking of the stool, even though such statements were not shown to be part of the res gestæ. There-

fore, in basing his opinion as to the connection between the injury to the chest and the death of insured, Dr. Griffith assumed nothing that was not already substantiated by the testimony. But, even if these statements were completely taken out of the case, he still based his conclusion as to this causal connection upon the history obtained from insured of the injury which was received to the chest, his own clinical examination, the progress of insured's condition as he personally observed it, and an examination of the heart following the autopsy. In this connection, we said, in *Eby v. Travelers Ins. Co.*, 258 Pa. 525, 534: "It is well settled that a physician may testify in favor of his patient to a statement by the latter in relation to his condition, symptoms, sensations and feelings made for the purpose of receiving medical advice. Such statements are in the nature of hearsay and, therefore, would be excluded under the general rule, but the courts admit them on the ground of necessity, as being incapable of proof by other evidence." While it is true that declarations made by insured to Dr. Griffith many days after the accident that he had received an injury to the chest were inadmissible since such statements were not part of the res gestæ (*Riley v. Carnegie Steel Co.*, 276 Pa. 82, 84), nevertheless, no objection to this testimony was made by counsel for defendant, and the answer was permitted to go unchallenged. Therefore, it remains in the case part of the testimony: *Eby v. Travelers Ins. Co.*, supra, 536.

Defendant further contends that plaintiff has failed to show that the death of insured resulted "directly, exclusively and independently of all causes, through accidental means", as provided by the policy in suit. We cannot agree with this argument. Dr. Griffith testified that while insured was at the time of the accident suffering from arteriosclerosis, yet that disease was merely compatible with the age of insured, that it was in a passive condition at the time of the injury, that with the degree of this disease which was found in the heart he would have lived for some time had he not been so injured, and

that the injury to the myocardium, caused by the blow to the chest, was the immediate, accelerating and inciting factor causing insured's death. Moreover, the record is replete with evidence that insured was in apparent good health prior to the accident, engaged in his practice, drove his automobile and generally was physically active, and that following the receipt of his injury, he showed a physical decline until his total collapse on November 9, 1939. Therefore, it is obvious that it was for the jury to determine whether the arteriosclerosis was but a condition and that the blow to the chest was the moving, sole and proximate cause of death. In *Kelley v. Pittsburgh Casualty Co.*, 256 Pa. 1, we affirmed a judgment on the opinion of the court below containing the following well-settled principle [p. 6] : "If disease, while existing, be but a condition and the accident the moving, sole and proximate cause of the death, the exception in the policy will not relieve the insured for death so caused." And [p. 7] "The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but . . . appear rather as the passive allies of the agencies set in motion by the injury. . . . Where accidental injury aggravated a disease, and thereby hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death. . . . The phrase 'resulting directly, independently, and exclusively in death,' refers to the efficient, or, as some courts speak of it, the predominant cause of death . . ." See also *R. E. Tr. Co. of Phila. v. Met. L. Ins. Co.*, 340 Pa. 533, 538-539; *Johnson v. Kentucky Insurance Co.*, 144 Pa. Superior Ct. 116, 124-125.

Nor can we find any merit in defendant's further argument that plaintiff failed to show that notice of insured's death was given within the time required under

the terms of the policy, which provides: "D. (4) Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. E. (5) . . . *Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.*" (Italics added). The record shows that written notice was not given until November 18, 1939, thirty-five days after the accident in question. However, it is clear under the circumstances here presented that it was a question for the jury to determine whether such notice, given within twenty days after the insured had reason to believe he had or might have a claim under the terms of the policy, was sufficient. Although insured received his injury on October 14, 1939, the testimony indicates that none of the results he had insured against had occurred prior to November 9, 1939, the date when he was disabled by a heart collapse. Relative to the time in which notice must be given under the clause here involved, we said, in *Leslie v. Metropolitan L. Ins. Co.,* 320 Pa. 87, 90: "Moreover, a further provision of the policy in suit states that 'Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice, and that notice was given as soon as was reasonably possible.' The instant situation would seem to be exactly such as is covered by this provision. It is not disputed that plaintiff gave notice of the insured's injury within a reasonably close time after it became apparent on February 18th, and, since no injury compensable under the policy had apparently occurred before that date, it was not reasonably possible for plaintiff to give notice of the fact before then. He could not give notice of a fact of which he was himself ignorant, and which he had no means of ascertaining [cases cited omitted]."

We can find no prejudicial error by the learned court below in its refusal of defendant's points for charge. The evidence was properly submitted to the jury, in a charge substantially correct.

Judgment affirmed.