## Louis J. Valente, Guardian Unto Anna Salengo v. Commercial Insurance Company of Newark, New Jersey

[ 236 A.2d 241 ]

June Term, 1967

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed October 3, 1967

Reargument Denied November 21, 1967

*Ryan, Smith & Carbine* for the plaintiff.

*Webber & Costello* for the defendant.

**Keyser, J.** Plaintiff, Anna Salengo, is the named beneficiary in an accident insurance policy issued to her deceased husband, John J. Salengo, on April 16, 1956, by the Metropolitan Casualty Insurance Company of New York. The liabilities on policies issued by this company were contractually assumed by the defendant.

Plaintiff's suit is brought to recover $2,000, the face of the policy, under the claim that Mr. Salengo died on November 15, 1963 as a result of accidental bodily injury suffered on August 8, 1963. Jury trial resulted in a verdict and judgment for the plaintiff.

The case is here on defendant's exceptions to the denial of its motions for a directed verdict and for judgment notwithstanding the verdict. The sole question for review raised by these motions is the sufficiency of the evidence to establish that Mr. Salengo's death resulted from accidental bodily injury, directly and independently of all other causes, as provided by the policy. The defendant claims the plaintiff failed to sustain her burden of proof on this issue as was incumbent upon her. *Reynolds* v. *John Hancock L. Ins. Co.,* 117 Vt. 541, 544, 97 A.2d 121.

In passing upon the motion for a directed verdict the evidence must be taken in the light most favorable to the plaintiff and the effect of modifying evidence is to be excluded. If there is any credible evidence fairly and reasonably tending to support the plaintiff's claim, the question is for the jury and the motion cannot properly be granted. *Cheney* v. *Wheeler,* 122 Vt. 295, 297, 170 A.2d 642.

Contradictions and contradictory inferences are for the jury to resolve. The tendency of the evidence and not its weight is

458

to be considered. *Campbell* v. *Howard National Bank,* 118 Vt. 182, 183, 103 A.2d 96. All conflicts are to be resolved against the excepting party, *Stanley & Sons, Inc.* v. *Roy,* 125 Vt. 136, 138, 211 A.2d 243, and all intendments are in favor of the verdict below. *Harte* v. *Peerless Ins. Co.,* 123 Vt. 120, 124, 183 A.2d 223.

■ Defendant's motion for judgment notwithstanding the verdict, as applied to the evidence, is tantamount to a motion for a directed verdict. It is to be passed upon in the same way. *Merrill* v. *Reed,* 123 Vt. 248, 253, 185 A.2d 737.

The insurance policy with which we are here concerned insured the plaintiff "against—(1) loss or disability resulting directly and independently of all other causes, from accidental Bodily injury * * *." The plaintiff necessarily relies upon this clause for recovery.

It is pointed out that the policy contains no specific exceptions, or negative provisions. The coverage is expressed solely by the language used in the insuring clause above quoted. The insurance company defined in carefully chosen words the loss against which it insured the decedent.

The defendant cites *Rodia* v. *Metropolitan Life Ins. Co.,* 354 Pa. 313, 47 A.2d 152 as a case closely in point with the case at bar. The policy involved in that case contained a clause which excluded coverage for death caused wholly or partly, directly or indirectly, by disease. The evidence established that the insured's death was caused wholly or partly by bodily infirmity from which he had been suffering prior to his fall. The court held that this precluded recovery under the accident policy. That case is thus distinguished from the case at bar and it has no application here.

■ The defendant argues that there was no evidence that the injury sustained by the deceased was the "sole" and direct cause of his death. In urging the injury must be the "sole" cause, the defendant apparently takes the position that if other causes of death are present, not directly related to the accidental injuries, there can be no recovery. The use of the words "sole cause" is foreign to the language of the insurance agreement. A reading of the record indicates that they came into the case only by way of the court's charge. And to this the plaintiff saved an exception. This aspect of the charge gave the defendant more than it was entitled to under the policy. We do not agree with this restrictive construction of the insuring clause.

█ It is a fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer. *Corsones, Admr.* v. *Monarch Acc. Ins. Co.,* 103 Vt. 379, 381, 154 A. 693.

█ The clause "resulting directly and independently of all other causes" means "the efficient, or, as some courts speak of it, the predominant, cause of death." *Foulkrod* v. *Standard Acc. Ins. Co.,* 343 Pa. 505, 23 A.2d 430, 433. Appleman Insurance Law, Vol. 1A, §392, p. 40.

In *Browning* v. *Equitable Life Assur. Soc. of United States,* 94 Utah 532, 72 P.2d 1060, 1076, the court said the words mean "sole and proximate cause." In *Kelley* v. *Pittsburg Casualty Co.,* 256 Pa. 1, 100 A. 494, 495, it was held the phrase "means proximate cause." The words "directly" and "proximately" were construed to be synonymous in *Fineberg* v. *Lincoln-Phelps Apt. Co.,* 55 Ohio App. 402, 9 N.E.2d 1011, 1015. So also in *Budzinski* v. *Metropolitan Life Ins. Co.,* 287 Mich. 495, 283 N.W. 662, 666, 286 N.W. 842, the court held recovery may be had if the accident was the efficient, dominant, proximate cause of death. The court said in *Landis* v. *Pioneer Mutual Casualty Co.,* 116 Ohio App. 309, 187 N.E.2d 604, 606, that there must be an intervening cause of death completely separate from the accident. And in *Corsones, Admr.* v. *Monarch Acc. Ins. Co., supra,* this court said that decedent's "death was attributable to the accident and not to the hernia, which was not a new and independent cause of death, but merely a link in the chain of causation between the accident and the death."

For many years prior to August 8, 1963, the insured, John J. Salengo, operated a grocery store in West Rutland, Vermont. He worked long hours and had very little help. He had made no complaints of illness either to any members of his family or to his friends and business acquaintances. He appeared to them to be in good health. He had no history of past injuries or sickness except one time he was treated by a doctor when he stepped on a nail.

On August 8, 1963, about noon, the decedent fell some four to six feet to the ground from a platform in the rear of his store. He suffered a contusion on the left side of his head and upper chest, a broken rib and an injury to his left shoulder. Mrs. Salengo discovered her husband lying on the ground unconscious and had him taken to the Rut-

land Hospital. He was admitted at 12:20 P.M. Shortly after 1 P.M. he sustained convulsive seizures one being fairly severe.

Several hours later that day he was transferred to the Mary Fletcher Hospital in Burlington. On August 14 an angiogram test was conducted on Mr. Salengo at the Mary Fletcher Hospital. This indicated a place in the neck where there was some other substance than the blood vessel wall itself that was taking up space, that is, the column of blood going by in one region was narrow.

Mr. Salengo returned home on August 18 but was readmitted to the Mary Fletcher Hospital on November 7, 1963. A second angiogram taken on November 8 showed a plaquing of the bifurcation of the internal carotid artery which supplies blood to the left side of the brain. This indicated the process had extended and part of the brain was losing some circulation.

Dr. Wallman, defendant's witness, testified that arteriosclerosis was present before Mr. Salengo's fall. The injuries to Mr. Salengo indicated to him a rather forceful blow resulted from the fall. This condition of arteriosclerosis became progressively worse in the subsequent months after the fall and his condition was very much worse on November 8 than on August 14. The witness agreed that Mr. Salengo went into "a down hill slide" after the accident. Anticoagulants were administered in November to make the blood less liable toward clotting in the brain. A bilateral adrenal hemorrhage developed and Mr. Salengo's total collapse followed. It was Dr. Wallman's opinion that death was actually caused by the progression of arteriosclerosis of the blood vessels of the neck and brain, and not by the fall.

On the other hand, the death certificate states the cause of death was bilateral adrenal hemorrhage and lobar pneumonia. The latter cause was interpreted by Dr. Merriam as terminal pneumonia which is very common in people who are dying over a matter of a day or so.

The testimony of Dr. Merriam, plaintiff's principal medical witness, showed that a compromised circulation of blood to the left side of the insured's brain brought on the convulsive seizures. Such a seizure is evidence of brain damage. He said with an artery that is plaqued, if an injury happens to aggravate that plaque and rupture it, it causes more compromise of the circulation because those plaques are very friable. It was his opinion that Mr. Salengo's "fall has caused an injury to the neck causing an injury to the artery." In his opinion the giving of anticoagulants to prevent possible thrombosis was proper

treatment. This had a causal relation to his death but the adrenal hemorrhage was the condition directly leading to his demise.

The testimony of other witnesses clearly demonstrates that after Mr. Salengo returned home from the hospital on August 18, he was moody, was absolutely helpless, couldn't do any work, and progressively got weaker every day. On this and the medical evidence the jury could readily have found that Mr. Salengo never recovered his physical well-being after the fall.

The defendant places emphasis on the fact that Dr. Merriam could not say with reasonable medical certainty what the cause of Mr. Salengo's death in fact was. It does stress the opinion of Dr. Wallman that death was not caused by the fall. It was his opinion that the actual cause of death was arteriosclerosis. This was in conflict with the cause stated on the death certificate as adrenal hemorrhage and lobar pneumonia.

Expert testimony is to be treated in the same manner as any other testimony by triers of fact and is subject to the same tests as to weight and· probative value as non-expert testimony. *Sanborn* v. *Elmore Milling Company,* 152 Me. 355, 129 A.2d 556, 558. Opinion testimony does not establish any material fact as a matter of law. *Board of Firemen's Relief & Retirement Fund., etc.* v. *Marks,* 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965. Neither is it of controlling effect. 20 Am.Jur., Evidence §1208; 32 C.J.S., Evidence §567.

Expert medical testimony is necessary where the cause of death is obscure. But a medical opinion was not necessary to establish a causal connection between the results of the injuries caused by the fall and Mr. Salengo's death provided there is medical testimony from which this fact can be ascertained. See *Marsigli Estate* v. *Granite City Auto Sales,* 124 Vt. 95, 103, 197 A.2d 799.

It is of substantial significance that before his fall, Mr. Salengo led a normal life, was never sick and in apparent good health, was busily engaged in the operation of his store, and then, shortly after a forceful fall which caused injuries in the region of his sclerotic condition, his physical condition progressively and quite rapidly deteriorated.

It may be true that the sclerotic condition of Mr. Salengo (shown by the August angiogram), if left to run its course, might in time

inevitably have produced death, independent of the injuries received in the fall. Dr. Smolinski, the family physician, testified that everybody has arteriosclerosis in some degree, it becomes more predominant at age 35 to 40, but the deceased had no more of a problem with it than the average citizen.

From anything which appears in the record Mr. Salengo might well have lived much longer but for the fall. There is no evidence to the contrary nor evidence to rebut this inference. The jury could have reasonably and properly inferred from all the evidence in the case that the accident disturbed his arteriosclerotic condition and aggravated and accelerated its progress.

Where accidental injury aggravated a disease and thereby hastened death so as to cause it to occur at an earlier date than it otherwise would have but for the accident, it is the "direct and independent cause" of the death. *Foulkrod* v. *Standard Acc. Ins. Co., supra,* 23 A.2d at p. 433. In *Gillespie* v. *Vermont Hosiery & Machinery Co.,* 109 Vt. 409, 415, 199 A. 564, a workmen's compensation case, it was held that where a dormant disease (arteriosclerosis) is revived or accelerated by accidental injury causing disability or death, full compensation is allowable.

The fact that a physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the proximate and predominant producing cause. In such case disease or low vitality do not arise to the dignity of concurring causes, but appear rather as the passive allies of the agencies set in motion by the injury. *Foulkrod* v. *Standard Acc. Ins. Co., supra,* 23 A.2d at p. 433.

Therefore, it is obvious from the record that it was for the jury to determine whether the arteriosclerosis and any other physical infirmities were but a condition, or a new and independent cause of death, and whether the blow to the region of his sclerotic condition was the immediate and accelerating factor which formed a link in the chain of causation between the accident and the death. *Kelly* v. *Prudential Ins. Co.,* 334 Pa. 143, 6 A.2d 55, 58.

If there was not a new and independent cause of death, the defendent is liable. Since the medical procedures were proper and the complications which ensued were natural consequences of accidental injury and its treatment, the jury was justified in finding there

was no new and independent cause of death. The evidence supports the conclusion that death resulted from the misadventure of August 8, 1963, which set the entire process in motion. *Corsones, Admr.* v. *Monarch Acc. Ins. Co., supra,* 103 Vt. pp. 381, 382, 154 A. 693.

In our opinion the evidence in the record justified the finding of the jury that the decedent died as a result of an accidental bodily injury within the meaning of the policy. No basis exists for interference with their conclusion by this court on appeal.

*Judgment affirmed.*