**Steve A. ZIMAN, Plaintiff-Appellee,**

**v.**

**The EMPLOYERS FIRE INSURANCE COMPANY, Defendant-Appellant.**

**No. 39, Docket 73–1265.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1973.

Decided Jan. 7, 1974.

Robert Grussing, III, Brattleboro, Vt. (A. Luke Crispe, Brattleboro, Vt., on the brief), for plaintiff-appellee.

William F. McNulty, New York City, (Dick, Hackel & Hull, Rutland, Vt., and Anthony J. McNulty, New York City, on the brief), for defendant-appellant.

Before KAUFMAN, Chief Judge, and LUMBARD and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

The Employers Fire Insurance Co. ["Employers"] appeals from a judgment in the sum of $78,277 awarded the appellee, Steve A. Ziman, for personal injuries sustained in an accident on July 30, 1967, caused by the negligence of Employers' insured, David Hodgdon. We reverse.

On July 30, 1967, a bulldozer negligently maintained by David Hodgdon struck the appellee, leaving his lower left leg crushed and mangled. Ziman shortly thereafter filed suit in the United States District Court for Vermont[1] and when the defendant, Hodgdon,[2] failed to appear or defend,[3] obtained a default judgment against him. The appellee then brought a diversity suit in the same district court against Employers, Hodgdon's insurer under a policy of comprehensive general liability, to enforce the unpaid default judgment. Employers answered that it was under no legal obligation to compensate Ziman for the injuries sustained, since Hodgdon, its insured, had failed to supply it as soon as was practicable with information regarding time, place and circumstances of the accident on July 30, and the names and addresses of available witnesses, contrary to condition 4(a) of

---

1. Jurisdiction was grounded on diversity of citizenship, 28 U.S.C. § 1332, Ziman being a citizen of New Hampshire.

2. Also named as defendants in the action were Alonzo Hodgdon, co-owner of the bulldozer, and the Hodgdons' company, H & W Contractors. Subsequently, the plaintiff voluntarily dismissed the complaint against Alonzo Hodgdon.

3. Hodgdon's insurer, Employers, had refused to defend.

Hodgdon's policy.[4] Employers also claimed that the insured had failed to "cooperate" with Employers in its continuing investigation concerning the accident, in breach of condition 4(c), which provided that the insured was required to cooperate with the company and assist it in the making of settlements as well as in the conduct of any suit.[5]

The trial commenced on October 3, 1972, and on October 6, 1972, after all the evidence had been presented, the trial judge charged the jury that

> Since the plaintiff relies on the policy issued to Hodgdon, the burden is assigned to him to prove that Hodgdon complied generally with the terms of his policy, and now the defendant, after that, has raised and by way of defense the claim that Hodgdon failed to supply the information as to time, place and circumstances of the occurrence, and the names and addresses of available witnesses as soon as practicable. The defendant also claims by way of defense, as I have indicated that Hodgdon failed to cooperate with the defendant and its representatives within the terms and provisions of the policy.
>
> The burden of proof on these issues, the matters of defense, rests with the defendant, and if the defendant sustains its burden on these points, it has the further burden of proving the failure to supply the information and

the lack of cooperation on the part of Hodgdon was material and prejudicial to the defendant in the performance of its duties under the contract.

The defendant took timely exception to this charge on the ground that it placed "the burden of proof with reference to information and cooperation upon [it]," even though the burden should have been on the plaintiff since the policy made compliance with these requirements "conditions precedent to any action under the policy." Employers took further exception to the charge for the reason that it placed upon the defendant the burden of establishing that it had sustained "material and substantial harm" or "prejudice" as a result of Hodgdon's failure to comply with the conditions of the policy.

The jury retired at 11:40 a. m. to deliberate. At 2:50 p. m. the court received a note from the foreman asking:

> Does the defendant have to show material damage and prejudice. Could we have some examples of what they would be if the answer is "yes"? The jurors are unclear as to prejudice and material damage as they apply to this case, as there is little or no testimony in this regard. . . .

At 3:00 p. m., the trial judge, over the exception of defense counsel, instructed the jury that:

> [B]efore there can be a breach of duty to cooperate, the failure on the part of the insured must be material

---

4. Clause 4(a) of the policy provided that

In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

5. Clause 4(c) of the policy provided that

The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation of (sic) incur any expense other than for first aid to others at the time of accident.

and substantial, and the presence or absence of harm and prejudice is normally determinative of whether there has been a substantial shortage in the insured's duty to his insurance carrier.

The burden of proof is on the defendant to show that he has been harmed by the insured's failure to co-operate.

The jury retired again at 3:02 p. m. and just eleven minutes later returned with a general verdict in favor of the plaintiff, who was awarded a judgment in the sum of $78,277.[6]

■ Appealing from this judgment, Employers argues that Chief Judge Holden's initial charge to the jury with regard to burden of proof and the necessity of material harm or prejudice to the insurer was so erroneous and prejudicial as to make it impossible for the defendant to obtain a fair verdict. We agree. As the Supreme Court of Vermont in Houran v. Preferred Acc. Ins. Co. of N. Y., 109 Vt. 258, 272, 195 A. 253, 259 (1937), stated:

> [W]here, by the terms of the insurance contract, a specified notice of accident, given by or on behalf of the insured to the insurer, is made a condition precedent to liability on the part of the latter, the failure to do so will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted.

Here, clause 4(a) by the unambiguous terms of the contract was clearly made a condition precedent. As such, the burden of proof under Vermont law was on the insured, and here on the plaintiff, Ziman, who stood in the place of the insured, to establish compliance with the notice of accident provision. Houran v. Preferred Acc. Ins. Co. of N. Y., *supra,* 109 Vt. at 371, 195 A. at 259, Hersey v. Northern Assurance Co., 75 Vt. 441, 444, 56 A. 95, 96 (1907). As the *Houran* de-

cision also establishes, no showing whatsoever of material harm or prejudice to the insurer was required. 109 Vt. at 272, 195 A. 259.

Since the jury returned a general verdict, it is uncertain on what basis it reached its decision. Quite possibly, it relied on the court's erroneous charge and incorrectly concluded that Employers had failed to establish that it had been materially harmed or prejudiced. The jury may even have reached its verdict on the basis that the defendant had not sustained its burden of proof on the issue of Hodgdon's compliance or non-compliance with clause 4(a) of the insurance policy, the notice of accident provision, although under Vermont law that burden actually rested on the plaintiff, Ziman.

■ In his brief, Ziman concedes that "the law of Vermont is clear that a notice provision such as the one involved here is a condition precedent and that when the insured has breached such a condition material harm or prejudice is immaterial." Nevertheless, he argues that the cases supporting this proposition have all involved the question whether the insurer was given timely notice that an accident had occurred and not whether the further information regarding time, place, and circumstances of the accident and witnesses thereto called for in clause 4(a) was also adequately reported. Moreover, he maintains that this additional information was at least partially provided by the insured in the present case, so that the gist of Employers' argument is not so much that Hodgdon breached clause 4(a) but rather that he did not make available as detailed information as was desired by Employers. According to the appellee, this argument is in essence a claim of noncooperation, in breach of clause 4(c). Under Vermont law, a co-operation clause is considered a condition subsequent and, unlike a notice of accident provision, it places the burden

---

6. The $78,277 judgment consisted of the default judgment of $65,000 against David Hodgden, and interest thereon.

of proof on the insurer to establish noncompliance.[7]

The appellee is correct in stating that the issue of compliance with a notice of accident clause has generally arisen in the context of whether notice has been timely given. Neverthless, the Vermont Supreme Court has not limited its decisions exclusively to this portion of standard notice clauses such as the one here.[8] Rather, the language of these decisions indicates that the burden is on the party seeking relief, here Ziman, to demonstrate compliance with the entire clause. The purposes served by a prompt notification of accident, the facilitation of an early investigation of the occurrence and the avoidance of fraudulent claims, Houran v. Preferred Acc. Ins. Co., 109 Vt. at 271, 195 A. at 259, are no less advanced by information regarding the time, place, and circumstances of the mishap as well as the names and addresses of any available witnesses.[9] Moreover, Hodgdon conceded that, in sending notice of Ziman's accident to Employers, he was not providing all this information.[10] Although Ziman attempts to characterize this apparent failure to provide all the information required as a possible lack of coopera-

tion, we believe it raises the question whether Hodgdon fully complied with the notice of accident clause. This question was one for the jury and one regarding which the burden of proof should have been placed on the plaintiff, Ziman.

The appellee also argues that the supplemental charge to the jury was not erroneous since the trial judge stated only that the burden was on the insurer to show material harm or prejudice with regard to the cooperation clause.[11] No mention was made by the judge of the notice of accident provision. Although this is technically true, it fails to take account of the fact that on two occasions during his original charge to the jury, the trial judge did indicate that a showing of material harm or prejudice was likewise necessary with regard to the notice of accident clause. How much weight the jury gave these earlier instructions is uncertain. At any rate, nothing in the supplemental charge suggested that they were to be disregarded.

Because the jury may have relied upon the erroneous instructions of the trial judge in reaching its verdict, we reverse and remand for a new trial.

7. *See* Houran v. Preferred Acc. Ins. Co., 100 Vt. at 271, 195 A. at 258; Francis v. London Guar. & Acc. Co., 100 Vt. 425, 429, 138 A. 780, 781 (1927).

8. Clause 4(a) closely resembled the notice of accident clause in *Houran*, which provided that

In the event of accident written notice shall be given by or on behalf of the Assured to the Company or any of its authorized agents as soon as is reasonably possible thereafter. Such notice should contain information respecting the time, place and circumstance of the accident, with the name and address of the injured and any available witnesses. If such information is not reasonably obtainable, particulars sufficient to identify the Assured shall constitute notice. The Assured shall keep the Company advised respecting further developments in the nature of claims and suits when and as they come to his knowledge.

9. In *Houran*, the court took care to note that the notice clause was not unreasonable, and that, having agreed to it, the insured and any party standing in his place would be bound by its provisions. 109 Vt. at 273–274, 195 A. at 260.

10. Our dissenting brother relies heavily on Hodgdon's testimony for the proposition that there were no questions of fact concerning compliance with clause 4(a). We do not, however, find the record conclusive on this point. Hodgdon's testimony, as quoted in the dissent, left totally unresolved the question whether he had supplied sufficient information regarding the time, place, and circumstances of the accident and the availability of witnesses.

11. With regard to a cooperation clause, the burden does, in fact, rest on the insurer to show material harm or prejudice. Francis v. London Guar. & Acc. Co., 100 Vt. 425, 429, 138 A. 780, 781 (1927); Houran v. Preferred Acc. Ins. Co., 109 Vt. at 270, 195 A. at 258.

TIMBERS, Circuit Judge (dissenting):

In this diversity action, it seems to me that the majority has strained to read the standard notice provisions of this comprehensive general liability insurance policy—*in the context of the undisputed relevant evidence*—for all that they might be worth, rather than for the least that they have to be worth, from the point of view of bailing out this insurance company that refused to defend its insured in accordance with the terms of its policy. The result is that this plaintiff, whose leg was crushed and mangled by a bulldozer negligently maintained by the insured and used in the insured's contracting business, has been stripped of a $78,277 judgment— admittedly through no fault of the *plaintiff* but because of the alleged failure of the *insured* to comply with the notice provisions of the policy. In view of the fact that no member of this panel of our Court is a member of the bar of the State of Vermont whose law is being applied in this diversity action, I should have thought that great weight would be given to the determination of the Chief Judge of the District of Vermont in applying here the law of Vermont whose Supreme Court in very recent decisions has made it abundantly clear that provisions of an insurance policy, including specifically the notice provisions, are to be liberally construed with respect to the insured and strictly construed with respect to the insurer. Since I believe that the majority, in substituting its interpretation of controlling Vermont law for that of the district court, has almost precisely turned about this rule of construction, I respectfully dissent.

The most critical fact in this case is that there was no real controversy with regard to notice of the occurrence of the accident having been given to the insurer as soon as practicable in accordance with clause 4(a) of the policy.[1] The insurer so conceded.

The evidence was undisputed that the accident occurred on Sunday, July 30, 1967, at Hinsdale, New Hampshire. Ziman was operating a bulldozer owned by Hodgdon on the latter's property. Ziman alighted from the bulldozer to inspect it. The bulldozer started backwards. It struck Ziman, leaving his lower left leg crushed and mangled. No one other than Ziman was present at the time of the accident. There were no witnesses other than Ziman. Hodgdon, who was not present at the scene of the accident, first heard about it from his sister-in-law who in turn had heard about it on the radio. As soon as he heard about it, Hodgdon went to the hospital to visit Ziman. Shortly thereafter Hodgdon reported the accident to Kenworthy, his insurance agent.[2] Ken-

---

1. Clause 4(a) of the policy is set forth in full in footnote 4 of the majority opinion.

2. The uncontroverted trial testimony by Hodgdon regarding his reporting the occurrence of the accident was as follows (Transcript, 62–63):

"Q. But, you say that after you learned of the accident and the injuries of Mr. Ziman, that you started out for the insurance company and go ahead and tell us in your own words what happened.

A. I was in the hardware store and I see Kenworthy walking by, and I met him on the sidewalk and walked down with him; went to the office, and I told him a man had been hurt; told him Mr. Ziman's name. He wrote it on a piece of paper and said, 'Don't worry about it, I will take care of it, and if things develop, you are all covered.' That is about the extent of it.

Q. And he filled out a paper for you?

A. He wrote on a piece of, you know regular scratch paper, on a regular pad.

Q. He wrote the information down?

A. Right.

Q. Now, at that time did you tell him whether or not you knew anything about the accident? What did you tell him about that?

A. Well, I told him it had happened, but I didn't know how it had happened. There was no way of knowing because I wasn't there. I don't know whether he got hurt by my dozer or by his. I don't know.

Q. You told this to Mr. Kenworthy?

A. Yes.

Q. Did Mr. Kenworthy ask you if there were any witnesses to the accident?

worthy testified that Hodgdon had reported the accident to him and had told him all he knew about it. (Transcript, 147–48).

Thus, upon the uncontroverted evidence in the trial court, each of the essential provisions of clause 4(a) of the policy regarding notice of the occurrence of the accident was fully complied with:

(1) "Written notice" of the "occurrence" of the accident was given "by . . . the insured", Hodgdon, through Kenworthy, the insurance agent, "to the company".

(2) Such notice was "sufficient to identify the insured", Hodgdon.

(3) Such notice included "reasonably obtainable information with respect to the time, place and circumstances thereof", i. e., according to Kenworthy, Hodgdon told him all he knew about it.

(4) Such notice included "the [name and address] of the injured", Ziman.

(5) Such notice included "the [name and address] of available witnesses", there being only one witness, Ziman.

(6) Such notice was given "as soon as practicable", there being no claim by the company to the contrary.

On this state of the record, I think that no reasonable person could say that there was any real controversy with regard to notice of the occurrence of the accident having been given to the insurer in accordance with clause 4(a) of the policy.

The only real issue tried in the district court was whether Hodgdon, the insured, had fully cooperated with the company. The latter complained that it could not locate the insured to obtain a statement from him,[3] and that he did not return its telephone calls or answer its letters. The entire trial was concerned with, not whether timely notice was given to the company, but whether Hodgdon had cooperated with the company, as required by clause 4(c) of the policy.[4]

This distinction is vital from the standpoint of understanding the applicable Vermont law and the district court's charge to the jury, including its supplemental charge. As the majority correctly states, under Vermont law the burden is on the insured to prove compliance with the notice of accident provision of the policy (clause 4(a)), that provision being a condition precedent, Houran v. Preferred Accident Insurance Company of New York, 109 Vt. 258, 271, 195 A. 253, 259 (1938); but the burden is on the insurer to establish noncompliance with the cooperation provision of the policy (clause 4(c)), that provision being a condition subsequent. *Francis, supra,* 100 Vt. at 429, 138 A. at 781; *Houran, supra,* 109 Vt. at 271, 195 A. at 258. A showing of material harm or prejudice to the insurer is required to

---

"A. I don't remember if he did. There was none that I know of. The only one that was there was Mr. Ziman. He was the only one there.
Q. He was the only one there as far as you could learn from checking into it?
A. Yes.
Q. And, had Mr. Kenworthy been the man you had bought the policy from and done business with right along up to that time?
A. He is the only one, yes."

3. The Vermont Supreme Court has made it very clear that this is what the cooperation clause of the policy is all about:

"Under the cooperation clause of the policy, it was the duty of [the insured], in good faith to aid and assist the company in its defense of the . . . suit. The very first obligation he was under was to give defendant's counsel a full and truthful account of the circumstances leading up to and attending the accident . . . . This he did not do." Francis v. London Guarantee & Accident Company, 100 Vt. 425, 430, 138 A. 780, 781 (1927).

4. Clause 4(c) is set forth in full in footnote 5 of the majority opinion.

establish noncompliance with the cooperation clause, *Houran, supra,* 109 Vt. at 270, 195 A. at 258; *Francis, supra,* 100 Vt. at 430, 138 A. at 781, but it is not required to establish compliance with the notice of accident clause. *Houran, supra,* 109 Vt. at 272, 195 A. at 259.

In view of this applicable Vermont law and the state of the trial record indicating that the only real issue was whether Hodgdon had adequately cooperated with the insurer, I think the jury's question to the court at 2:50 P.M. can be taken to refer to the cooperation issue and nothing else:

"Does the defendant have to show material damage and prejudice? Could we have some examples of what these would be if the answer is 'yes'? The jurors are unclear as to prejudice and material damage as they apply to this case, as there was little or no testimony in this regard. Signed, John Barnett, Foreman."

In responding to this question, the trial judge obviously directed his supplemental instruction to the cooperation issue and nothing else:

"The Court will repeat this part of its prior instructions on this point when the Court stated that it instructs you that (384) before there can be a breach of duty to cooperate, the failure on the part of the insured must be material and substantial, and the presence or absence of harm and prejudice is normally determinative of whether there has been a substantial shortage in the insured's duty to his insurance carrier.

The burden of proof is on the defendant to show that he has been harmed by the insured's failure to cooperate. So, the answer is 'yes'.

Now prejudice in this context means harm or damage in some significant way. It means deprived of an advantage which otherwise it might have had. The requirement of cooperation on the part of the insured in supplying information is for the purpose of enabling the insurance carrier to make an early investigation while the evidence is available. So the burden is on the defendant to show that by reason of lack of cooperation in the context of this case, that it has been unable to procure evidence which was otherwise not available to it."

Indeed, if we read the charge as a whole and in the context of the uncontroverted state of the record that there simply was no issue with regard to the notice of the occurrence of the accident having been given to the insurer in accordance with clause 4(a) of the policy, then the distinctions drawn by the majority between the burdens of proof which the trial judge is said to have charged with respect to the notice clause and the cooperation clause become harmless at worst.

In the last analysis, what is here involved is simply this: That an insurer can avoid its liability when it has not been informed of the occurrence of an accident is the law of Vermont and certainly is reasonable; but to say, when it has had reasonable notice of the occurrence and therefore the opportunity to investigate, that an insurer can avoid responsibility by asserting that the original information was scant, even when there is no showing of harm or prejudice, is certainly unjust and contrary to the law of Vermont.

The experienced trial judge below, in charging the jury as he did in the context of the undisputed relevant evidence which established that there was no real controversy with regard to notice of the occurrence of the accident having been given to the insurer, did so in accordance with the public policy of the State of Vermont with respect to the construction of policies of insurance:

"It is a fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer." Valente, Guardian v. Com-

mercial Insurance Company, 126 Vt. 455, 459, 236 A.2d 241, 243 (1967). And this applies specifically to notice provisions of policies of insurance:

"Generally speaking, provisions for the giving of notice of loss . . . to an insurer will be liberally construed in favor of the insured, and a substantial compliance therewith, as distinguished from a strict compliance, will suffice." (quoting from 44 Am.Jur.2d Insurance § 1482). Stonewall Insurance Company v. Moorby, 130 Vt. 562, 566–67, 298 A.2d 826, 829 (1972).

Finally, having in mind that this is a diversity action where we are reviewing the application of the law of Vermont by the Chief Judge of the District of Vermont in charging a jury regarding the provisions of an insurance policy in the context of a trial record that for all practical purposes was devoid of any issue of notice of the occurrence of the accident having been given to the insurer, I cannot say that the majority's analysis of the charge in light of the record is an unreasonable one. I do suggest, however, with the utmost deference, that this would be an appropriate case in which to exercise the commendable restraint so well expressed just a few years ago in a like situation:

"In a case like this one, where a question of state law must be determined in a diversity case, great weight should be given the determination of a district judge sitting in that state. A court of appeals should not reverse the considered judgment of the district court on the law of its state unless it believes it to be clearly wrong.[6] E. g., Bernhardt v. Polygraphic Co., 350 U.S. 198, 204–205, 76 S.Ct. 273, 100 L.Ed. 199 (1956); People of State of California v. United States, 235 F.2d 647, 653–654 (9 Cir. 1956); Mitton v.

Granite State Fire Ins. Co., 196 F.2d 988, 992 (10 Cir. 1952).

[6.] Not infrequently, no member of the panel of a court of appeals is a member of the bar of the state whose law is in question. That is the case here."

Lomartira v. American Automobile Insurance Co., 371 F.2d 550, 554 (2 Cir. 1967) (Lumbard, Ch. J.).

*A fortiori*, "[t]hat is the case here."[5]

I would affirm the judgment of the district court in all respects.

---

[5.] Chief Judge Holden, the trial judge below, aside from having been a member of the Vermont bar for some 35 years, has the unique distinction in the federal judicial system of having served, prior to his appointment to the District Court of Vermont, for many years as a Vermont state court judge, including distinguished service as a Superior Judge and as Associate Justice and Chief Justice of the Vermont Supreme Court.