944 A.2d 210 (2007)
2007 VT 126
Susan R. SPERLING and Kris Sperling
v.
ALLSTATE INDEMNITY COMPANY.
No. 06-045.
Supreme Court of Vermont.
November 9, 2007.
*211 Robert G. Cain of Paul Frank + Collins, P.C., Burlington, for Plaintiffs-Appellants.
Patricia S. Orr of Powell Orr & Bredice, P.L.C., Williston, for Defendant-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. DOOLEY, J.
Insureds Susan and Kris Sperling appeal the superior court's grant of summary judgment for insurer Allstate Indemnity Company (Allstate) in a first-party-coverage dispute arising out of an oil spill in their basement. Insureds contend that the court: (1) failed to apply the doctrine of efficient proximate cause; (2) failed to give a reasonable interpretation of the policy term "explosion" in denying personal property coverage; and (3) erroneously concluded that Allstate had not waived the coverage exclusion for personal property. We affirm.
¶ 2. The following facts are undisputed. Insureds purchased a homeowner's insurance policy from Allstate on September 13, 2003. On November 2, 2003, insureds *212 heard a noise coming from their partially finished basement. After investigating the source of the noise, insureds discovered that a suitcase had fallen off of a shelf above the home-heating oil tank. The falling suitcase had broken the valve through which oil passes on the way to the tank, causing oil to pour out of the tank onto the floor. Before the fire department could stop the leak, approximately 160 gallons of oil leaked out of the tank and spread throughout the basement, causing damage to the structure and to personal property in the basement and rendering the home temporarily uninhabitable.
¶ 3. Insureds applied for coverage under their homeowner's policy for the loss caused by the oil spill. Allstate originally denied all coverage for the incident in a letter dated November 3, 2003, but later provided coverage for damage to the oil tank and the broken valve. Allstate continued to deny coverage for costs associated with cleaning up the spilled oil, damage to the basement structure, and damage to personal property contained in the basement.
¶ 4. Insureds' policy provided coverage for the "dwelling" and "other structures" under sections entitled "Coverage A" and "Coverage B," both of which were all-risk policies, extending to all "sudden and accidental direct physical loss[es] to [the dwelling and other structures] . . . except as limited or excluded in [the] policy." Coverages A and B were limited by twenty-two exclusions. The relevant exclusionary language stated
[w]e do not cover loss to the property . . . consisting of or caused by: . . . (14) Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.
In addition, we do not cover loss consisting of or caused by any of the following: (15) . . . (e) contamination, including, but not limited to the presence of toxic . . . gasses, chemicals, liquids, solids or other substances at the resident premises.
The policy also provided the following in article 23: " We do not cover loss to covered property . . . when: (a) there are two or more causes of loss to the covered property; and (b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above."
¶ 5. Coverage C, which governed personal property coverage, was limited to sixteen specific perils that caused a "sudden and accidental direct physical loss." This meant that unlike the all-risk approach of Coverages A and B, Coverage C was limited to harms caused by one of the sixteen named perils. The specific peril for which insureds sought coverage is loss caused by an "explosion." Coverage C also contained a "pollution" exclusion similar to exclusions contained in Coverages A and B.
¶ 6. In response to Allstate's denial of coverage, insureds filed suit on November 1, 2004, seeking a declaratory judgment that the losses resulting from the oil spill were covered under the policy. Subsequently, the parties each filed motions for summary judgment. The superior court granted Allstate's motion in a decision dated January 18, 2006, concluding that the policy's pollution and contamination exclusions precluded coverage for the structural damage to insureds' home caused by the oil spill. The court also determined that the release of the oil was not an "explosion," and that, therefore, the policy did not provide coverage for the damage to insureds' personal property. Finally, the court rejected insureds' argument that Allstate waived its right to deny coverage on the contamination exclusions for the loss to the personal property, because it failed to *213 invoke this exclusion in its initial denial-of-coverage letter sent on November 3, 2003.
¶ 7. On appeal, insureds argue that the superior court erred in concluding that (1) the doctrine of predominant and efficient causation did not apply because the pollution exclusions barred recovery for the damage to their basement; (2) the release of home heating oil from the storage tank was not an explosion and thus personal-property coverage under the policy was precluded; and (3) Allstate did not waive its right to rely on the pollution exclusion to deny coverage for their personal property losses.
¶ 8. We review a grant of a motion for summary judgment de novo, employing the same standard as the trial court. Anderson v. Coop. Ins. Cos., 2006 VT 1, ¶ 6, 179 Vt. 288, 895 A.2d 155. Summary judgment is appropriate where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). We construe an insurance contract in accordance with its terms and "the evident intent of the parties as expressed in the policy language," and interpret the terms according to their "plain, ordinary and popular meaning." Serecky v. Nat'l Grange Mut. Ins., 2004 VT 63, ¶ 17, 177 Vt. 58, 857 A.2d 775 (citation omitted). If a term is subject to more than one reasonable interpretation, "the ambiguity must be resolved in favor of the insured." Id. "Nonetheless, we will not deny the insurer the benefit of unambiguous terms inserted into the contract for its benefit." Concord Gen. Mut. Ins. Co. v. Madore, 2005 VT 70, ¶ 9, 178 Vt. 281, 882 A.2d 1152.
¶ 9. We start with insureds' causation argument. Insureds argue that, in accordance with the policy provision on causation and our law on insurance claim coverage, we must assign a predominant cause to the escape of oil and the resulting damage. Drawing on a leading treatise, insureds define that cause as the "procuring, efficient, and predominant cause, that from which the effect might be expected to follow, without the concurrence of any unforeseen circumstances." 7 L. Russ et al., Couch on Insurance § 101:46 (3d ed. 2005). They argue that the predominant cause in this case was the falling of the suitcase on the valve, and the secondary cause was the release of the oil. They then argue that the predominant cause is not excluded from coverage, and as a result, that the damage to the basement is covered by the policy.
¶ 10. In addition to drawing on the policy language, insureds rely on a variety of relevant precedents. In Town of South Burlington v. American Fidelity Co., 125 Vt. 348, 215 A.2d 508 (1965), the issue was whether the town's liability insurance carrier had a duty to defend it against a claim made by a driver allegedly injured when driving over a hole in the road caused by a leak from a culvert. The policy excluded "coverage for liability arising from the existence of streets and sidewalks." Id. at 349, 215 A.2d at 510. This Court affirmed the conclusion of the trial court, finding a duty to defend because the complaint "alleges an accident and injury having its origin in a defective culvert, as distinguished from street or sidewalk." Id. at 351, 215 A.2d at 511. We emphasized that the trial court had gone beyond the complaint and taken evidence on the cause of the accident and that evidence so clearly showed that the liability originated in the culvert "that it will be treated as controlling." Id.
¶ 11. A second relevant case is Valente v. Commercial Insurance Co., 126 Vt. 455, 236 A.2d 241 (1967), a lawsuit over the proceeds of an accidental death policy. The insured suffered major injuries as a result of a work accident, but also had a *214 previously condition involving a partially blocked artery in his neck. Insured's medical expert opined that the primary cause of death was the injuries from the accident, while defendant's expert saw insured's arteriosclerosis of the neck as the primary cause. On appeal after a jury verdict for insured, defendant argued that the accident had to be the sole cause of death in order for insured to recover. We held that the correct rule under the policy was that the accident must be "`the efficient, or, as some courts speak of it, the predominant cause of death.'" Id. at 459, 236 A.2d at 243 (quoting Foulkrod v. Standard Accident Ins. Co., 343 Pa. 505, 23 A.2d 430, 433 (1942)).
¶ 12. Insureds point to Valente as evidence that this Court has adopted the predominant-causation test to determine causation for insurance-policy coverage. Insureds argue further that this case is similar to Town of South Burlington in that the dominant cause of the loss was the force that occurred at the beginning of the chain and led to the release of the oil. The superior court rejected the application of this causation analysis to determine coverage. The court analyzed the exclusions from real property damage coverage and found they fit into two general categories: one involving causes of harm and the other consisting of elements of harm. The court put pollution contamination in the latter category, and concluded that a causation analysis did not apply to exclusions in that category. It relied upon two main reasons for this conclusion: (1) the language of the policy clearly prevents liability; and (2) the release of a contaminant almost always has an independent cause, which, unless it is otherwise excluded, would virtually always require coverage in pollution cases, defeating the purpose of the exclusion.
¶ 13. We agree with the trial court's analysis foremost because it is required by the language of the policy. As the court emphasized, the language of the exclusions includes not only "loss . . . caused by" listed events but also "loss consisting of" listed conditions. Although contamination or pollution can be a cause of loss, it is most often an effect of other causes, that is, a "loss consisting of" rather than a cause. At least in the instances where it is the effect of other causes, it is not, under the language of the policy, subject to a causation analysis. Thus, the provision on which insureds rely to require the applicability of a predominant-cause analysis, article 23, does not apply. Numerous courts have reached this result when interpreting similar language in comparable circumstances. See, e.g., State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042, 1044-46 (Alaska 1996); Kane v. Royal Ins. Co., 768 P.2d 678, 684 (Colo.1989); Montee v. State Farm Fire & Cas. Co., 99 Or.App. 401, 782 P.2d 435, 437 (1989) (relying upon "consisting of" language to reject application of efficient proximate cause to find coverage); cf. Novell v. Am. Guar. & Liab. Ins. Co., 15 P.3d 775, 778 (Colo.Ct.App.1999) (reaching opposite result from Montee in the absence of "consisting of" language).
¶ 14. Consistent with that analysis, we note that article 23 is itself an exclusion, not a source of further coverage. While article 23 states that in the case of "two or more causes of loss" there is no coverage if the predominant cause is excluded, it does not state the opposite. See Hayley v. Allstate Ins. Co., 262 Mich.App. 571, 686 N.W.2d 273, 276 (2004) (construing identical policy language to not "extend coverage to losses not otherwise covered"). Insurance "[p]olicies which specifically and unambiguously exclude coverage are effective to preclude the insurer's liability." Am. Fid. Co. v. Elkins, 125 Vt. 313, 315, 215 A.2d 516, 518 (1965). As stated earlier, we cannot deny the insurer the benefit *215 of unambiguous provisions inserted into the policy for its benefit.
¶ 15. We also agree with the trial court that the application of efficient proximate cause as proposed by the insureds would eviscerate the exclusion. As the Texas Court of Appeals observed: "to read the policy in the manner requested by the [insureds] could lead to creating coverage simply by looking so far down the chain of causation as may be necessary to find a cause that was not excluded." Auten v. Employers Nat'l Ins. Co., 722 S.W.2d 468, 471 (Tex.App.1986). The result would be an ineffective exclusion, because the pollution exclusion would work only where the cause of the pollution escape is excluded from coverage. Id. at 470-71. As the superior court concluded, if the spill of oil is one cause and the cause of the oil spill is another, "there is no language which would permit the insurer to get out of the business of insuring against toxic pollution."
¶ 16. We note, as did the trial court, that the efficient-proximate-cause provision of the policy applies only where there are two or more causes of loss to the covered property. Such cases arise only if two independent, concurring causes exist, each of which would be sufficient to cause the harm at issue. Restatement (Second) of Torts § 431, comment b, at 429 (1965). Insureds concede that there are not two or more separate and independent causes here. Had insureds made an argument to the contrary, we are convinced that to the extent that the oil release can be viewed as a "cause" of insureds' loss, it must be seen as a direct effect of the falling suitcase, rather than an event independent of or separate from this predominant cause. See State Farm Mut. Auto. Ins. Co. v. Roberts, 166 Vt. 452, 459, 697 A.2d 667, 671 (1997) (for the purposes of the related doctrine of concurrent causation, causes must be independent of each other); Mailhiot v. Nationwide Mut. Fire Ins. Co., 169 Vt. 498, 502, 740 A.2d 360, 361-63 (1999) (same).
¶ 17. Insureds have argued that Allstate acted inconsistently by reimbursing insureds for the oil tank and its contents, but not for other basement fixtures. On the contrary, we find Allstate's actions entirely consistent. The damage to the oil tank was caused by the falling suitcase, and did not result from or consist of pollution or contamination.
¶ 18. We turn next to whether the damage to insureds' personal property caused by the oil spill is covered under the homeowner's policy. To review, the personal property coverage, Coverage C, differs from the structural property coverage, Coverages A and B, in that the loss is covered only if it is caused by one of sixteen specific perils. The peril insureds rely on for recovery is "[e]xplosion." The superior court concluded, after reviewing the common use of the word and judicial definitions contained in Vermont case law, that "[n]owhere is the gravitational flow of liquid from a hole in a tank onto the ground described as an `explosion.'" We agree.
¶ 19. We first emphasize the factual basis for the claim. Insureds moved for summary judgment, based on affidavits of Susan Sperling and insureds' counsel. They filed a statement of undisputed facts pursuant to Vermont Rule of Civil Procedure 56(c)(2); it stated that "[a]s a result of the breakage of the valve stem off the end of the oil tank, oil inside the tank flowed outside the tank." Although Allstate disputed part of the paragraph in which the statement appears, it did not dispute the above language and asserted in its own statement of undisputed material facts that "oil spewed out onto their basement floor." Thus, the characterization of the event was deemed admitted. The *216 court stated accordingly that the undisputed fact was that "[o]il was pouring out of the tank." The parties have not disputed the court's characterization. Thus, insureds are arguing here that oil pouring out of a tank constitutes an "explosion."[*]
¶ 20. When interpreting the legal effect of the policy language, we read the policy terms according to their ordinary and popular meaning, resolving any ambiguities that arise in favor of the insured. Madore, 2005 VT 70, ¶ 9, 178 Vt. 281, 882 A.2d 1152. The term explosion is not defined in the homeowner's policy. We thus examine the ordinary and popular meaning of the term, "[a]ccordingly [taking] judicial notice of its dictionary definition to determine its popular meaning." Id. ¶ 10.
¶ 21. Insureds have found a dictionary definition that they assert covers the facts here. One alternative meaning of "explode" in the Webster's New Collegiate Dictionary defines the term as "to burst forth suddenly and often violently" and "explosion" as the act of exploding. Webster's II New College Dictionary 395 (4th ed. 1995). Insureds argue that the facts show that the release was violent in this case and the definition applies. At best, this characterization is an exaggeration of the undisputed facts.
¶ 22. Even if we accept insureds' characterization of the facts, there is no coverage. The dictionary definitions tend to have two categories of the term "explode" or "explosion." The first involves a release of energy. See American Heritage Dictionary of the English Language 626 (4th ed. 2000) (defining an explosion as: (1) "[a] release of mechanical, chemical, or nuclear energy in a sudden and often violent manner with the generation of high temperature and usually with the release of gases"); Merriam-Webster's Collegiate Dictionary 441 (2003) (explode is defined as "to undergo a rapid chemical or nuclear reaction with the production of noise, heat and violent discharge of gases"). The second category involves a violent bursting as a result of internal pressure. See American Heritage Dictionary, supra, at 626 ("a violent bursting as a result of internal pressure"); Merriam-Webster's, supra, at 441 ("to burst violently as a result of pressure from within"). Insureds' argument invokes the second category.
¶ 23. Although most of the Vermont decisions involving explosions have fallen in the first category, see, e.g., Riess v. A.O. Smith Corp., 150 Vt. 527, 528, 556 A.2d 68, 69 (1988) (describing the ignition of leaking propane as an explosion); Winter v. Unaitis, 124 Vt. 249, 251, 204 A.2d 115, 117 (1964) (describing the ignition of a blasting cap as an explosion), a few have fallen within the second category. See Aube v. O'Brien, 140 Vt. 1, 5, 433 A.2d 298, 300 (1981) (describing the bursting of a tire as an explosion); Joly v. Coca-Cola Bottling Co., 115 Vt. 174, 176, 55 A.2d 181, 183 (1947) (describing the bursting of a soda bottle as an explosion). In each of the cases in the latter category, the explosion occurred because a container could not hold the internal pressure on it. No case *217 has extended the term to cover the release of fluid, under its own pressure, where the container is breached by an outside force. In fact, other jurisdictions have found that the sudden rupture of a container, even occurring without an outside force, does not meet the definition of explosion when the normal pressure of the material inside the container caused the rupture. See Honeymead Prods. Co. v. Aetna Cas. & Sur. Co., 275 Minn. 182, 146 N.W.2d 522, 529 (1966) ("[T]he fact that normal pressure from the stored oil caused the plates to fracture would appear to rule against any finding that the fracture was due to an `explosion. . . .'"); Aetna Cas. & Sur. Co. v. Osborne McMillan Elevator Co., 26 Wis.2d 292, 132 N.W.2d 510, 513 (1965) ("Static or potential force or pressure resulting only from the weight of the contents in a container may cause a container to split open and release the contents but such an occurrence is hardly looked upon by the average person to be an explosion."); see generally 10A L. Russ et al., Couch on Insurance § 150:6 (3d ed. 2005) ("In circumstances involving containers, explosion has often been defined as the pressure inside the container exceeding the strength of the container. . . .") In the absence of the release of energy through an ignitable substance, decisions require a buildup of internal pressure preceding the rupture in order to define the event as an explosion. See, e.g., Pre-Cast Concrete Prods., Inc. v. Home Ins. Co., 417 F.2d 1323, 1328 (7th Cir.1969) ("Thus, in circumstances involving a container, an explosion occurs when the pressure inside the container exceeds the strength of the container and results in a sudden release of the pressure.").
¶ 24. In making their argument that there is coverage, insureds rely on our oft-stated rule that ambiguities in policy language must be resolved in favor of the insured. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 9, ___ Vt. ___, 925 A.2d 1018 (mem.). We reaffirm that rule. It applies, however, only if reasonable people could differ as to the interpretation of the language at issue. See O'Brien Brothers' P'ship, LLP v. Plociennik, 2007 VT 105, ¶ 9, ___ Vt. ___, 940 A.2d 692. Here, whatever the force of the discharge of the oil, the tank did not rupture because of the internal pressure of the oil. Rather, the oil escaped the tank as a result of the suitcase falling onto, and breaking, the valve. Under these circumstances, no reasonable construction of the policy language can define the release as an explosion. The superior court correctly ruled that the release of the oil was not an explosion, and, therefore, that the Allstate policy did not cover insureds' claim for loss of personal property because the accident did not involve a peril named in Coverage C of the policy.
¶ 25. Finally, insureds argue that Allstate waived its right to rely on the pollution exclusion in Coverage C to deny coverage for the personal property damage. Because we have held that insureds failed to show coverage under Coverage C, we do not reach the pollution exclusion in that coverage. As insureds acknowledge, the waiver doctrine on which they rely cannot extend coverage beyond the original terms of the insurance agreement. Laurendeau v. Metro. Life Ins. Co., 116 Vt. 183, 189, 71 A.2d 588, 592 (1950) ("A waiver may avoid a forfeiture but may not extend the insurance beyond the terms of the policy."); 7 L. Russ et al., Couch on Insurance § 101:8 (3d ed. 2005) ("The majority rule is that an insured cannot use the waiver or estoppel doctrines to broaden coverage under the policy."). Thus, in the absence of coverage for a named peril, *218 waiver alone cannot enable insureds to prevail.
Affirmed.
NOTES
[*] In filing their motion for summary judgment, insureds did not focus on the need to specify a peril for coverage of personal property, but argued that Allstate had waived any objection to coverage. Allstate argued that no peril applied. Insureds then responded with new affidavits from Kris and Susan Sperling characterizing the release of the oil as an "explosion" and adding that "[t]he oil burst out of the tank with enough force and under enough pressure to splatter from the floor to the walls and nearby shelves, approximately one foot above the floor." We conclude that this new characterization of the facts, which is very different from that in the first statement of undisputed facts, or first affidavit of Susan Sperling, came too late. In any event, we reiterate that insureds have not claimed that the court's statement of facts was erroneous.